CARROLL J. ANDRE ET AL. *v.* MONTGOMERY COUNTY PERSONNEL BOARD

[No. 1295, September Term, 1976.]

*Decided July 12, 1977.*

The cause was argued before GILBERT, C. J., and MENCHINE and MELVIN, JJ.

*Paul Plaia, Jr.,* for appellants.

*Nathan J. Greenbaum, Assistant County Attorney,* with whom were *Richard S. McKernon, County Attorney, Richard E. Frederick, Deputy County Attorney* and *Martin J. Hutt, Assistant County Attorney,* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

A merit system for officers and employees for Montgomery County was established pursuant to the county charter in 1948. Montgomery County Code, Ch. 33 sets out what is stylistically known as the "County Personnel Act." That act or ordinance provides in pertinent part:

### "ARTICLE II. PERSONNEL REGULATIONS GENERALLY.

Sec. 33-5. Definitions; applicability of article; employee categories.
* * *

(1) *Merit system defined and general purpose.* The general purpose of this chapter is to establish regulations not in conflict with the Charter of Montgomery County to implement a system of personnel administration that meets the social, economic and program needs of the people of Montgomery County based upon merit principles and facilitates the organizational and program objectives of the county government. These regulations provide for the appointment, advancement and retention of employees on the basis of merit and fitness to be ascertained in most cases by competitive examination without regard to sex, marital status, race, religion, national origin or political affiliation. Provision has been made in these regulations for appeal to the personnel board

by any applicant or employee who believes that the intent of article IV of the Charter of Montgomery County or of these regulations has been violated.

\* \* \*

Sec. 33-9. Applicants and applications.

\* \* \*

(i) *Employment policy and prohibition against discrimination.* It is the employment policy of Montgomery County to provide for appointment, advancement and retention of applicants and employees on the basis of merit factors to be ascertained in most cases by competitive examination without regard to sex, marital status, race, religion, national origin or political affiliation. The discrimination in employment or discrimination in advancement of any person who is an applicant or promotional candidate for a merit system position because of sex, marital status, race, religion, national origin or political affiliation is prohibited. Any applicant or promotional candidate for a county position who believes that the application filed for employment or promotion may have been processed in violation of the provisions of this section may appeal to the chief administrative officer within fifteen days of receiving written notification of the decision on the application for employment or promotion. Such appeal must be accompanied by substantiating evidence. The chief administrative officer shall take appropriate and prompt action in rendering a decision on the appeal. The appellee shall be notified by the chief administrative officer of the decision and the chief administrative officer shall forward all information on the appeal to the county personnel board. Whenever an appellant does not concur in the action taken by the chief administrative officer, the appellant may appeal to the county personnel board

within fifteen days of receipt of the notification of the chief administrative officer's decision. Such appeal shall be accompanied by a statement of the reasons. In such cases, or on its own initiative, if it does not concur with the action taken by the chief administrative officer, the county personnel board shall conduct such further investigation, including a hearing, as it deems necessary to ascertain whether the provisions of the county's employment policy against discrimination have been violated. The decision of the board shall be final and the chief administrative officer shall take all necessary actions to implement the board's decision."

An old and perhaps shop-worn cliche' reminds us that a chain is only as strong as its weakest link. When the weakest link is fashioned from a flimsy fabric the strength of the chain is virtually non-existent. Despite the high sounding language of the Personnel Act, and its apparent objectivity, a practice prevailed in the County's Department of Recreation whereby at least two of its employees were denied the opportunity for advancement. The denial took the form of what seemed to be favoritism superimposed upon "cronyism." [1]

The case now before us arises from an order entered in the Circuit Court for Montgomery County (Frosh, J.) which affirmed action taken by the Montgomery County Personnel Board. The complaint had been brought before the Montgomery County Personnel Board (Board) by two employees of the Department of Recreation. Carroll J. Andre and Claron McDaniel, the employees and appellants, asserted that actions of the Department of Recreation (Department) violated the county merit system, Mont. Co. Code, Ch. 33, and thereby deprived them of advancement opportunities under the merit system.

---

1. We make clear that we are not to be construed as holding that the persons who were selected were unqualified for the positions. Indeed, we express no opinion thereon. We do, however, make manifest that the merit systems were not followed.

Andre and McDaniel challenged the appointment process used in filling nine positions within the Department. McDaniel had applied for two positions — Recreation Program Coordinator (Sports) and Recreation Program Coordinator for Special Programs. Andre had applied for one — Recreation Program Coordinator for Community Centers. After nine days of hearings, the Board made findings of fact which illustrate the extent to which the "merit system" was ignored by the Director of the Department. The Board stated:

> "Both appellants are well-qualified, have satisfactorily performed their present duties and have demonstrated potential for professional growth and promotion.
>
> The Qualifications Appraisal Boards which interviewed candidates for the nine positions were comprised solely of Department of Recreation management personnel, usually the Director and Deputy Director.
>
> In a majority of the challenged appointments, the Director himself served as Chairman of the Qualifications Appraisal Board. Most of the appointees had either worked with him or were known to him prior to their appointments with Montgomery County.
>
> Evaluation of applicants was based on subjective judgments and personal knowledge of the candidates.
>
> In 1973, the Personnel Board became aware that the Personnel Office had not been adhering to closing date requirements on vacancy announcements. On September 21, 1973, the Personnel Board informed the Personnel Director that closing dates on employment opportunity announcements must be strictly adhered to as required by Section 33-9, *Applicants and Applications*, Subsection

(c), *Limited Application Acceptance Period,* of the Personnel Regulations.

In each of the cited cases, appointments were made on the basis of ratings by the Qualifications Appraisal Board, without reference to the available eligible list in accordance with Section 33-10 (r), *Use of Eligible Lists* of the Personnel Regulations.

Several of the candidates were appointed at salaries higher than Step A without prior written approval of the Chief Administrative Officer as required by Section 33-13 (1), *Within-Grade Appointments,* of the Personnel Regulations. However, there is no evidence that any of these actions were disapproved and testimony indicated that oral approval had been given by the Chief Administrative Officer."

The Board then proceeded to declare "specific findings" as to each of the nine positions that was filled under the guidance, if not instruction, of the Director, saying:

"1. *Associate Director of Recreation Programs*

Vacancy had been advertised on April 5, 1973, with a closing date of April 12, 1973 and was filled on July 30, 1973. Due to resignation of the incumbent in August 1973, the vacancy was readvertised on August 30, 1973, even though there was an eligible list containing four qualified candidates. Two additional names were added to the list on September 12 and 21, 1973 respectively, and one of these individuals was appointed. The candidate selected received a 'Well-Qualified' rating and was in the highest rated category. The Qualifications Appraisal Board consisted of the Director and Deputy Director. *Neither appellant applied for this position.*

2. *Associate Director of Facilities and Finance*

Vacancy was advertised on April 5, 1973, with a *closing date of April 12, 1973.* Testimony

revealed that four individuals were interviewed and found qualified by the Qualifications Appraisal Board, but only one name was placed on the eligible list. That individual was appointed. Testimony revealed that *this individual was a friend and former co-worker of the department head and did not apply for the position until June 4, 1973.* No records are available on the other applicants. *The appellants did not apply for this position.* It is evident that the Personnel Office failed to follow-up on the actions of the Qualifications Appraisal Board and was remiss in not placing the names of all qualified candidates on the eligible list as required by Section 33-10 (p), *Eligible Lists* of the Personnel Regulations.

3. *Recreation Program Coordinator (Sports)*

Vacancy was advertised on March 22, 1973, with a closing date of March 29, 1973. Four persons were placed on the eligible list. Mr. McDaniel was interviewed and rated 'Qualified' by the Qualifications Appraisal Board. Subsequently, he was found not qualified by the Personnel Office. Accordingly, Mr. McDaniel was asked by the Deputy Director of the Department of Recreation to withdraw his application, which he did. Testimony indicated he actually was qualified at the time of application. The highest rated applicant, who received an 'Outstanding' rating was appointed.

4. *Recreation Facilities Supervisor*

Vacancy was advertised on May 6, 1974, with a closing date of *May 17, 1974.* Interviews were held on August 14 and 15, 1974 and five applicants were placed on the eligible list. *The highest rated candidate received a 'Well-Qualified' rating and was placed on the eli-*

*gible list on August 15 while the other four
candidates were not placed on the list until
September 9.* Prior to placing all candidates on
the eligible list, the successful candidate was
notified by the Director of the Department of
Recreation that he was to be appointed
effective September 16, 1974. *The record shows
that the appointee submitted a resume in June
1974, which was followed by an application
submitted on August 16, 1974. The appellants
did not apply for this position.* The Personnel
Office was remiss in accepting the resume and
subsequent application after the closing date of
the announcement, which violated Section 33-9
(c), *Limited Application Acceptance Period* of
the Personnel Regulations.

5. *Recreation Program Coordinator (Arts)*

Vacancy was advertised on March 22, 1973,
with a closing date of March 29, 1973. Only two
persons were placed on the eligible list. The
highest rated candidate, who received a rating
of 'Qualified Plus-Plus', was selected for
appointment. *This candidate's application had
been submitted two weeks before the issuance
of the announcement. The appellants did not
apply for this position.*

6. *Recreation Program Coordinator (Community
Centers)*

Vacancy was advertised in June 1973; eight
qualified applicants were placed on the eligible
list on May 31, June 20 and June 21, 1973
respectively. Two applicants were rated
'Well-Qualified' and six were rated 'Qualified'.
Mr. Andre was among the eight qualified
applicants, with a rating of 'Qualified'. The
position was never filled and the list was
allowed to expire in December 1973. The
position was readvertised on February 11,

1974, with a *closing date of February 22, 1974. The candidate subsequently appointed submitted an application to the Department of Recreation on February 23, 1974, which was after the closing date and in violation of Section 33-9 (c), Limited Application Acceptance Period* of the Personnel Regulations.

*The application was not forwarded to the Personnel Office until March 11, 1974, the date of the appointment, which was after the interview had been conducted and the candidate selected.* The appointee received an 'Outstanding' rating. *The eligible list in March 1974 contained only one name as none of the previous applicants had been recertified after the expiration date in December 1973.*

*There was no evidence that the eight qualified applicants on the original eligible list were aware that that particular eligible list had expired.* When the position was reannounced, apparently none of the eight reapplied. Failure to notify them of this fact and to provide them an opportunity to reapply is a reflection on the ethics of both the Department of Recreation and the Personnel Office.

7. *Recreation Program Coordinator (Roving Youth Leader)*

*The record shows that this position was created for a particular individual.* Evidence of this fact is contained in a memorandum dated November 13, 1973 from Neil A. Ofsthun, Director, Department of Recreation to William H. Hussmann, Chief Administrative Officer. *The vacancy was advertised on January 21, 1974, with a closing date of January 25, 1974.* Four names were placed on the eligible list although one of the individuals had not even

applied for this position. There is a discrepancy between the eligible list furnished to the Personnel Board staff in early 1975 and the one presented at the hearing. Specifically, the list submitted at the hearing showed the same name with a rating of 'Qualified'. The record shows that *this individual was rated 'Outstanding' by the Qualifications Appraisal Board, but was later found to be 'Not Qualified' by the Personnel Office. On March 11, 1974, this applicant submitted a personal letter claiming additional experience acquired as an undergraduate student. The Personnel Office, without verification* to substantiate this claim, *revised the rating to 'Qualified' and allowed the individual to be appointed effective March 11, 1974.* Establishment and use of this eligible list suggests an improper practice and abuse of the merit system. *Neither appellant applied for this position.*

8. *Recreation Program Coordinator (Special Programs)*

   *Vacancy was advertised on April 5, 1973,* with a closing date of April 12, 1973. Mr. McDaniel was interviewed and rated 'Qualified' by the Qualifications Appraisal Board. However, his name does not appear on the eligible list in accordance with Section 33-10 (p) *Eligible Lists* of the Personnel Regulations. No clarification or evidence was offered to support his exclusion from the eligible list. *The appointee, the only outside candidate, applied on April 4, 1973 before the vacancy was announced.* He was given the highest rating, 'Well-Qualified Plus'. The handling of this case is further evidence of the improper and inefficient administration of the examination and eligibility certification process.

### 9. *Program Supervisor (Aquatics)*

*Vacancy was advertised on April 11, 1973,* with a closing date of April 18, 1973. *Only one individual was placed on the eligible list. This individual applied on March 12, 1973, was interviewed and placed on the eligible list on April 3, 1973, eight days before the vacancy was announced.* Testimony indicated one other person was interviewed, but there are no records to substantiate the testimony. The appellants did not apply for this position." (Emphasis supplied).

Little, if anything, more need be said to show that the Director ignored, bent or twisted the personnel list to suit his own whim.

The Board, notwithstanding the violations of the merit system by the Director, concluded that while the appellants' "promotional prospects were jeopardized" by the above enumerated nine appointments, "their rights as County employees under the Personnel Regulations were not violated by ... [the director's] acts." The Board further opined that it could not "justify the remedies sought by the appellants." [2]

---

**2.** The Board decided, "that the Department of Recreation and the Personnel Office acted with complete disregard for established merit system procedures with regard to the processing of applications, recruitment, selection, establishment of eligible lists, and certification therefrom. The Board also finds record keeping was careless and inefficient. Further the Board believes the decision of a department head to hire people who had previously worked with him in another jurisdiction and offer them salaries far in excess of the County's entrance step and their previous earnings is a suspect practice and one that should not be permitted under a merit system. We also believe the selection methods used in these cases failed to demonstrate that those appointed were indeed the best qualified. We believe it is imperative that the Chief Administrative Officer, pursuant to his responsibility in Article IV, Section 402 of the Charter of Montgomery County, Maryland, develop adequate safeguards to assure proper administration of the merit system. Further, a policy statement should be issued to all management and supervisory employees prescribing the disciplinary action to be taken against them for failure to adhere to and abide by the Personnel Regulations.

With respect to the appellants' claim, we find that their promotional prospects were jeopardized by these appointments as they did not and do not now have the promotional opportunities they might have had, had

Aggrieved by the decision of the Board, the appellants journeyed to the circuit court. There they asked the court substantially to do the same thing that the Board had declined, namely to promote them to grade 24, retroactively from February 1974, or to promote them retroactively from February 1974 to the "first vacant Grade 24 'Coordinator' position. . . ."

Judge Frosh did not see it in the same light as do the appellants. He affirmed the Board, stating:

"The case presents itself before this Court as analogous to the classic tort situation wherein a restaurant diner sups from the tainted soup, learns of its taint but suffers no damage to his health. While the soup was tainted, the diner has no damage (save for a bitter taste) upon which relief may be fashioned.

In the case at bar, the Department of Recreation and the Personnel Office have served tainted soup and for their misfeasance should be reprimanded and enjoined from future violation. However the Appellants, as with the diners, have suffered no damage because better qualified people were hired for the only positions for which they applied. The Personnel Board did not act illegally when it did all that it could do. It reprimanded the Departments for their general procedures, but found that these particular Appellants had not been harmed specifically. While the Personnel Board found the 'prospects' of the Appellants were jeopardized and not what they might have been had promotions been from within the Department, this Court is aware of no requirement that only 'insiders' be hired.[3] The merit system offers an opportunity

promotions been made from within the Department. However, their rights as County employees under the Personnel Regulations were not violated by these acts. In view of the findings, the Board cannot justify the remedies sought by the appellants. Accordingly, their requests are denied."

**3.** Montgomery County Code Ch. 33, § 33-17 (d) does, however, permit the Chief Administrative Officer of the County to determine when competitive examinations are either impractical or not in the best interest

for County employees to be informed of the opening and allows for application, but not to the exclusion of non-County employees."

Dissatisfied with Judge Frosh's ruling, appellants now urge us to reverse the circuit court and thus the Board. Appellants assert:

"I. The action of the [court in affirming the] Personnel Board was arbitrary and unlawful because the conclusions it arrived at were contrary to the law, and the facts as adduced at the hearings. The Board, in its findings of fact, recognized damage to the appellants, yet still maintained that their rights as County employees were not violated.

II. The ... [Court's] failure to grant relief was a denial of the appellants' right to due process of law in that the Board found that the appellants do not have the promotional opportunities that they would have had but for the violative appointments within the Department of Recreation."

I.

*(a) Monetary relief*

The only provision in Chapter 33 of the Montgomery County Code which specifies the authority of the Board to remedy those promotional actions which it finds inappropriate and in violation of the merit system is contained in § 33-25 (x). That section provides: "The county personnel board may decide an appeal it has heard in any manner that it deems necessary, appropriate, and in the best interest of the county service."

While it is true, as appellants point out, that § 33-22 (k) [4] allows reinstatement without loss of pay once a suspended employee is exonerated, it does not follow, as appellants

---

of the county. A non-competitive qualifying promotional exam then may be given, after approval by the Board, to determine if the "promotional candidate is qualified to fill an in-service vacancy."

4. Section 33-22 (k) also grants the Board power to award, *in its discretion,* back pay to an employee who is suspended for disciplinary reasons.

argue, that a comparable remedy may be applied, by implication, to the situation now before us.

The Board's power to grant pecuniary relief in the event of suspension and subsequent reinstatement is specifically set forth in the Code. The § 33-22 (k) provision refers, however, only to those situations where pecuniary damages are easily ascertained. If an employee is wrongfully suspended without pay on June 21 but is reinstated on August 21, two months would have passed during which time the County, had it not acted wrongly in suspending the employee, would have paid the employee. The two month salary is readily determined.

In the case *sub judice* the requested monetary damages are conjectural. The appellants desired the Court (1) to award back pay, (2) for positions to which they *might* have been appointed. Thus, the appellants are asking the Court to infer their promotions because of the Department of Recreation's violations of the merit system. Such an inference, however, is a *non sequitur*. For the position of Recreation Program Coordinator (Sports) there were four persons placed on the eligible list, while there were eight eligible persons for the job of Recreation Program Coordinator (Community Centers). The list for Recreation Program Coordinator (Special Programs) contained the names of four eligible persons. No court can say that the appellants or either of them *would* have been appointed to the position even had the proper merit selection method been followed. Just how we are supposed to determine that the appellants are to be appointed *vis a vis* the other eligible applicants totally eludes us.

The standard for review for agency action, as set forth in *Snowden v. City of Baltimore*, 224 Md. 443, 445, 168 A. 2d 390, 391 (1961) is:

> "The Court will correct illegal actions and those which are arbitrary and unreasonable because they are not based on substantial evidence but it will not substitute its own independent examination of or its own judgment on the facts for those of the

agency to which the carrying out of state policy has been delegated."

See also *Furnace Branch Co. v. Board of County Commissioners*, 232 Md. 536, 194 A. 2d 640 (1963). *Board of County Commissioners v. Oak Hill Farms, Inc.* 232 Md. 274, 192 A. 2d 761 (1963); *Bryant v. Department of Public Safety*, 33 Md. App. 357, 365 A. 2d 764 (1976).

Applying the *Snowden* standard to the case at Bar, we are unable to say that the Board's refusal to award damages was not based on substantial evidence. The potential for promotion is what was wronged, not a right to promotion. The appellants' actual promotions are at best tenuous because, as we have seen, there were other applicants for the same positions, and those applicants also had their potential for appointment or promotion eradicated by the action of the Department.

### (b) Rights of Appellants were Affected

To the extent that promotional and appointment procedures are set out in the County Code, employees and applicants alike, have the right to expect adherence to those procedures. The Board found that the appellants' "promotional prospects were jeopardized by these appointments as they did not and do not now have the promotional opportunities they might have had. . . . However, their rights as County employees under the Personnel Regulations were not violated by these acts." The Board went on to state that it "cannot justify the remedies sought by the appellants."

We think the Board erred in concluding that the appellants' "rights" were not violated. On the contrary, their rights were either trod upon or ignored. It is not that the appellants' rights were not affected that is controlling but rather that the injury in this case is without remedy. The relief sought from the Board, by the appellants, was not in the best interest of the County service. Patently the Board could not order the promotion of the appellants over the other persons who were on the eligible lists. It could not

create a similar promotion for each person in the eligible list. The persons appointed to the vacancies were seemingly eligible therefor and, in any event, were not parties to the proceeding. We believe that the Board did everything that could reasonably be expected of it when it directed the Chief Administrative Officer to "develop adequate safeguards . . . [and] a policy statement should be issued . . . prescribing the disciplinary action . . . for failure to adhere to and abide by the Personnel Regulations." The Board action constitutes a remedy which is necessary, appropriate, and in the best interest of the County service. Mont. Co. Code § 33-25 (x).

## II

### *Due Process*

It is well established that "[t]he Fourteenth Amendment forbids the State to deprive any person of life, liberty, or property without due process of law." *Goss v. Lopez,* 419 U. S. 565, 572, 95 S. Ct. 729, 735, 42 L.Ed.2d 725, 733 (1975). "[T]he range of interests protected by procedural due process is not infinite." *Board of Regents v. Roth,* 408 U. S. 564, 570, 92 S. Ct. 2701, 2705, 33 L.Ed.2d 548, 556-57 (1972). As stated in Mr. Justice Powell's concurrence in *Arnett v. Kennedy,* 416 U. S. 134, 164, 94 S. Ct. 1633, 1649, 40 L.Ed.2d 15, 39 (1974), "[t]he applicability of the constitutional guarantee of procedural due process depends in the first instance on the presence of a legitimate 'property' or 'liberty' interest within the meaning of the Fifth or Fourteenth Amendment."

To determine whether Andre and McDaniel were denied their constitutional rights to due process of law, the Court must find either (1) that they had a property right to promotion with Montgomery County sufficient to warrant the protection of the 14th Amendment, or (2) that they had a property right to the County's abiding by the merit system regulations.

The Court in *Board of Regents v. Roth, supra,* 408 U. S. at 577, 92 S. Ct. at 2709, 33 L.Ed.2d at 561, said that "[t]o have a property interest in a benefit, a person clearly must have

more than an abstract need or desire for it. *He must have more than a unilateral expectation of it."* (Emphasis supplied).

With respect to the right to promotion and its accompanying back pay, Andre and McDaniel had "no more than an abstract need or desire for it." The County Code procedure for promotion is merely procedure and not, as appellants would like, a guarantee of promotion. *Koscherak v. Schmeller,* 363 F. Supp. 932 (SDNY 1973), aff'd 415 U. S. 943, 94 S. Ct. 1462, 39 L.Ed.2d 560 (1974) and *Cassidy v. Municipal Civil Service Commission of New Rochelle,* 375 N.Y.S.2d 300 (1975).

> "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth, supra,* 408 U. S. at 577, 92 S. Ct. at 2709, 33 L.Ed.2d at 561.

Thus, to the extent that the Montgomery County Code sets forth procedure for promotion, the appellants are entitled to its fair and accurate application. That, they hopefully will have in the future.

As observed in *Civil Service Commission of Denver v. District Court,* 527 P. 2d 531, 533-34 (Colo. 1974), "[d]ue process is not selective. Each and every person on the ... promotion list had rights worthy of protection, whether in the majority or the minority," *including those persons promoted.* The point in the *Civil Service Commission of Denver* case is that the existing property interests extended beyond the particular parties to the case. Were that Court to have remedied the parties' situation, other people's rights to due process would have been infringed upon, including those who obtained the positions.

The action of the Montgomery County Personnel Board is apposite to the *Denver* case. After affording appellants a full hearing, the Board provided a prospective remedy. If the Board had done otherwise, other persons' rights would have been adversely affected. Clearly, the most the Board could have done, if it were to "implement a system of personnel administration that meets the social, economic and program needs of the people of Montgomery County based upon merit principles . . . ," was to terminate the practices of the Department of Recreation. This it did. Appellants can expect no more.

We think Judge Frosh did not err in refusing to reverse the Board.

Ordinarily the Court assesses costs against the losing party. Here we shall make an exception. Md. Rule 1082 a. We believe the County's neglect, in supervising its personnel so as to avoid the type of inadvisable hiring practices utilized in this case, requires that it shoulder the costs.

> *Order affirmed.*
> *Costs to be paid by the appellee,*
> *Montgomery County.*