635 A.2d 77

Jean L. BETZ

v.

STATE of Maryland.

No. 656, Sept. Term, 1993.

Court of Special Appeals of Maryland.

Jan. 6, 1994.

Richard R. Titus (Michael J. Budow and Budow & Noble, P.C., on the brief), Ellicott City, for appellant.

Julia M. Freit, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued before WILNER, C.J., and FISCHER and MOTZ, JJ.

WILNER, Chief Judge.

The Circuit Court for Howard County held a lawyer in direct civil contempt and summarily fined her $250 because she neglected to deliver certain information to the court and disclose it to opposing counsel within the time directed in a pre-trial settlement conference order. The issue before us is whether the court erred in imposing that sanction under the circumstances. We believe that it did, and so we shall reverse the order.

This began as a civil action by John and Joyce Savelli against State Farm Fire & Casualty Co., their automobile insurer, to collect personal injury protection benefits the plaintiffs claimed were due to them under the policy. On February 15, 1992, the court entered a scheduling order which, among other things, established March 8, 1993 as the trial date and required that discovery be completed and dispositive motions be filed within certain times. On October 7, 1992, the court entered an order scheduling a pre-trial settlement conference for December 10, 1992 before Judge Dudley and requiring that, at least five days before the conference, the parties submit to the judge and exchange with each other a written statement containing or addressing 10 enumerated categories of information. At the request of defense counsel, appellant here, Judge Dudley postponed the conference to December 16.

On December 15—the day before the scheduled conference—the judge became aware that he had not received his copy of the information from either attorney and learned from the clerk that neither statement had been filed. He called the plaintiff's attorney, who said that he had planned to bring the statement to the conference. No communication was had with appellant. Instead, the judge, on his own initiative, cancelled the pre-trial conference, removed the case from the March 8, 1993 trial docket, directed the clerk not to schedule the case for trial before December 16, 1993, and entered an order finding both attorneys in "direct civil contempt" and fining them each $250 without benefit of a purging provision. In his order, Judge Dudley explained:

> "The failure to prepare, exchange and submit the statements as directed prevented the court and the parties from being prepared. The Court was therefore compelled to cancel the settlement conference. No other settlement conference could then be scheduled for it was too late. The Court lost that opportunity to help efficiently administer the caseload. Given the clearly stated express requirements of the Order, the failures of both counsel were inexcusable.... Such conduct by each attorney constitutes direct civil contempt within the meaning of Maryland Rule P3."

Plaintiff's counsel, we are told, has paid the fine. Appellant filed a timely motion for reconsideration in which she pointed out that, like plaintiff's counsel, she had prepared a pre-trial statement and was planning on delivering it to the court and to opposing counsel at the conference. She averred that she did not intend to violate the pre-trial order and believed that she was in substantial compliance with it. In that regard, she submitted that "[c]onsidering the simple nature of the issue in this case and the fact that both parties' attorneys were very familiar with same . . . a meaningful Settlement Conference could have been had on December 16, 1992," that she was in the courthouse that morning ready to proceed with the conference, and that it was never her intention "to intentionally disrupt the court procedures." The court denied the motion summarily, without a hearing and without stating any reasons. This appeal ensued.

Md. Rule 2–504 authorizes a circuit court to direct parties to appear for a pre-trial conference and to "file not later than five days before the conference a written statement addressing the matters listed in section (b) of this Rule." Judge Dudley's pre-trial order was in furtherance of and in conformance with that provision. It is an important provision. The burgeoning caseload of the circuit courts requires strict and efficient case management, and, as Judge Dudley noted, pretrial conferences facilitate settlements, help reduce the case backlog, and enhance efficient administration. For such conferences to be successful, the parties must be prepared to discuss settlement, possible resort to alternative dispute resolution methods, and other matters pertaining to the litigation, and that, in turn, requires that they have more than a passing familiarity with the case. An order that the parties or their counsel confer in advance of the conference and exchange information of the kind referred to in Rule 2–504(b) is not to be taken lightly and is not to be ignored by counsel.

That is not the issue before us, however. The question is one of remedy, in particular whether the court responded appropriately to counsels' failure to submit to the court and

exchange with each other, at least five days before the scheduled conference, the information specified.

The power to punish for contempt is an awesome one. As the Court pointed out in *State v. Roll and Scholl*, 267 Md. 714, 717, 298 A.2d 867 (1973), "the magnitude of its force demands care and discretion in its use so as to avoid arbitrary, capricious or oppressive application of this power." This is particularly true with respect to summary contempt proceedings, which the Court held "are only proper in cases where the action of the alleged contemnor poses an open, serious threat to orderly procedure that instant, and summary punishment, as distinguished from due and deliberate procedures, is necessary." *Id.* at 733, 298 A.2d 867. That is the framework within which we must judge the sanction in this case.

We note first that the contempt found by the court cannot legitimately be regarded as a civil contempt, as the court declared it to be. Although in *Winter v. Crowley*, 245 Md. 313, 226 A.2d 304 (1967) and later in *State v. Roll and Scholl, supra*, 267 Md. at 729–30, 298 A.2d 867, the Court delineated five criteria by which to judge when a contempt is civil as opposed to criminal,[1] the hallmark distinction is whether the sanction is coercive or punitive in nature. As the *Roll and Scholl* Court held, 267 Md. at 730, 298 A.2d 867, "[i]f it is a civil contempt the sanction is coercive and must allow for purging ...; but if it is criminal, it is punitive and must be determinate." The sanction here was clearly punitive and determinate.

---

1. Quoting from *Winter v. Crowley, supra*, the Court in *Roll and Scholl* observed:

"The five factors which generally point to a civil contempt are: '(1) the complainant is usually a private person as opposed to the State; (2) the contempt proceeding is entitled in the original action and filed as a continuation thereof as opposed to a separate and independent action; (3) holding the defendant in contempt affords relief to a private party; (4) the relief requested is primarily for the benefit of the complainant; (5) the acts complained of do not of themselves constitute crimes or conduct by the defendant so wilful or contumelious that the court is impelled to act on its own motion.'"

Appellant was fined $250 because of a past dereliction; there was no opportunity or ability to purge, to avoid the penalty by any future conduct. The fine was not intended to coerce appellant into any particular future conduct but simply to punish for past conduct. Moreover, in terms of the five criteria set forth by the Court of Appeals, it is evident that the complainant here was the court, not a private party, the relief was not requested by a private party, and the contempt finding affords no relief to any private party.

When this appeal was first noted, this Court recognized the problem, realized that the order could not pass muster as a civil contempt, and further recognized that none of the parties to the underlying case had any economic incentive to defend the order; it did not affect them. We therefore recast the appeal, initially titled as the underlying civil case had been titled, as a criminal appeal and requested the Attorney General to represent the State and defend the order. The Attorney General agreed that the contempt order had to be viewed as a criminal contempt and entered his appearance on behalf of the State. It is now undisputed, therefore, that the contempt found by Judge Dudley was a criminal contempt and not a civil one.

A second deficiency is the court's treatment of appellant's dereliction as a direct contempt that could be summarily punished. In this regard, we need first to recall what a contempt is. In *Goldsborough v. State,* 12 Md.App. 346, 355, 278 A.2d 623 (1971), then-Chief Judge Murphy said for this Court:

> "In a narrow sense, a contempt has been defined as a despising of the authority, justice, or dignity of the court; in a more general sense, a person whose conduct tends to bring the authority and administration of the law into disrespect or disregard, interferes with or prejudices parties or their witnesses during litigation, or otherwise tends to impede, embarrass, or obstruct the court in the discharge of its duties, has committed a contempt."

*See also Muskus v. State,* 14 Md.App. 348, 359, 286 A.2d 783 (1972).

The failure of a person to obey an order of court may constitute a contempt if the person has notice of the order and the failure to obey is deliberate. *Goldsborough v. State, supra,* 12 Md.App. at 356, 278 A.2d 623. It is not the mere failure itself that is the contempt, however, but rather the intent behind and effect of that failure. Criminal contempt is not a strict liability offense; willfulness or intent is an essential element. *DeVaughn v. District of Columbia,* 628 F.2d 205 (D.C.Cir.1980); *Duemling v. Fort Wayne Community Concerts, Inc.,* 243 Ind. 521, 188 N.E.2d 274 (1963); *Sheridan v. Kennedy,* 12 A.D.2d 332, 212 N.Y.S.2d 296 (1961); 17 Am.Jur.2d *Contempt* § 34. Moreover, a criminal contempt—and thus the accused's intent—must be shown beyond a reasonable doubt. *State v. Roll and Scholl, supra,* 267 Md. at 728, 298 A.2d 867. This becomes an important factor in examining when it is permissible for a court to treat a criminal contempt as a direct contempt that may be punished summarily.

A direct contempt is one "committed in the presence of the court, or so near to the court as to interrupt its proceedings." Md. Rule P1.a. If it does not meet that standard, it is a constructive contempt. Md. Rule P1.b. Only a direct contempt may be punished summarily; if the contempt is constructive, the court must give the accused an opportunity to challenge the alleged basis for the contempt and show cause why a contempt order should not be entered. Md. Rules P3. and P4.

Here, Judge Dudley knew only that the statements had not been submitted and exchanged as required by his order. He was informed that plaintiff's counsel had prepared his statement and intended to bring it to the conference. He did not know, because he had not asked, why appellant had not submitted and exchanged her statement. The "why," however, was an important element that needed to be considered before finding a criminal contempt, for it went to her

intent. It was important as well in light of the explanation subsequently given in appellant's motion for reconsideration—that the case was a simple one, that counsel were familiar with the relevant facts, and that the scheduled conference could have proceeded without the advance submission and exchange.

The Court of Appeals examined this problem in *Mitchell v. State,* 320 Md. 756, 580 A.2d 196 (1990). The criminal defendant there was held in direct criminal contempt after making an obscene gesture in open court following the imposition of sentence, without being afforded an opportunity to explain his conduct or offer remorse for it. The Court noted the strong public policy in favor of allowing a person, even in that setting, to explain his action, citing, among other authorities, earlier Maryland cases, pronouncements from the Supreme Court, and American Bar Association Standards. Although it was unwilling to hold that an alleged contemnor be given such an opportunity as a matter of due process "in every instance," it made clear that the instances where it was not required were very limited. The Court said, 320 Md. at 768, 580 A.2d 196, in that regard:

> "In some cases, affording a defendant an opportunity to speak in explanation of his conduct may only invite additional invective. Furthermore, where the conduct or speech is as direct or unequivocal as it was in the case before us, there may be little or no room for helpful explanation.
>
> On the other hand, a person whose inappropriate conduct was essentially reflexive, when confronted with the seriousness of what he or she has done, may quickly become contrite and effectively communicate an appropriate apology. Indeed, the explanation offered, or the sincerity with which it is offered, may persuade the trial judge to strike the finding of contempt. If not, allocution by the alleged contemnor will at least assist the judge in fixing the appropriate sanctions."

Even if an opportunity to explain and express contrition is not required as a matter of due process, it is ordinarily required as a matter of Maryland non-constitutional law, as

part of the accused's right of allocution. Indeed, in *Mitchell,* the Court reversed the judgment of contempt on that basis because that right had not been afforded.

*Mitchell,* as noted, involved essentially unambiguous conduct committed in open court in front of the judge. *See also Thomas v. State,* 99 Md.App. 47, 635 A.2d 71 (1993). It was directed specifically at the judge, and the contumacious intent behind it was clearly inferable. Yet even in that circumstance, summary punishment for criminal contempt was impermissible without affording the defendant an opportunity to explain or apologize. Surely, then, it must be impermissible in this case, where an officer of the court is involved, where her contumacious intent could not be so clearly inferred merely from her conduct, and where both contrition and a reasonable showing that the effect of the conduct was not so egregious would likely have been forthcoming.

Many judges have experienced aggravating—sometimes even defiant—conduct on the part of lawyers and others (just as many lawyers, and others, have experienced aggravating conduct on the part of judges), and, in the press of attempting to move dockets and resolve cases fairly and efficiently, the experience can cause instant irritation. Judges, too, are human and have human emotions; they get angry, often for good reason. But, unlike other people, judges have the sovereign power to punish, to deprive persons of their liberty and property, and that alone requires that they restrain their irritation. Punishment for contempt should never be imposed in anger, as an immediate emotionally reflexive response. There must be time, however brief, for reflective judgment, and affording the offending party an opportunity to explain or apologize can provide that respite.

We believe that, with all good intention, Judge Dudley acted too swiftly in this matter and without giving fair consideration to appellant's intent and the real effect of her failure to abide strictly by the pre-trial order. A contumacious intent is not established by this record, nor is it at all clear that the

scheduled conference in this case could not have proceeded without undue burden to the court. There may well be situations in which disregard of a clear requirement in a scheduling or pre-trial order will warrant a finding of contempt and an appropriate sanction; this is simply not one of them. See *DeVaughn v. District of Columbia, supra,* 628 F.2d 205, where, on very similar facts, the Court of Appeals for the D.C. Circuit reached the same conclusion we do.

We note, in closing, that the attention of the Court of Appeals, in its rule-making capacity, has been called to Fed. R.Civ.P. 16(f), which, as construed, subjects an attorney who fails to comply with a requirement contained in a pre-trial order to a range of sanctions, including an assessment payable to the clerk of the court. *Cf. In re Quintana,* 43 B.R. 668 (Bankr.Colo.1984). *See also* Ariz.R.Civ.Pr. 16(f).

JUDGMENT REVERSED; HOWARD COUNTY TO PAY THE COSTS.