683 A.2d 784

**Charles Michael TOBIN**

v.

**MARRIOTT HOTELS, INC., et al.**

No. 1588, Sept. Term, 1995.

Court of Special Appeals of Maryland.

Aug. 29, 1996.

Reconsideration Denied Oct. 29, 1996.

Joel S. Aronson (Charles Michael Tobin, on the brief), Washington, DC, for Appellant.

Daniel Karp (Kevin Karpinski and Allen, Johnson, Alexander & Karp, on the brief), Baltimore, MD, for appellee Montgomery Elevator Company.

Michael D. Maloney and Macleay, Lynch, Gregg & Lynch, on the brief, Washington, DC, for appellee Marriott Hotels.

Argued before WILNER, C.J., BISHOP *, J., and JAMES S. GETTY, Judge (retired), Specially Assigned.

JAMES S. GETTY, Judge, Retired, Specially Assigned.

The appellant herein, Charles Michael Tobin, alleges in this appeal that the Circuit Court for Montgomery County erred in imposing a $750.00 sanction, payable to counsel for appellees, for appellant's failure to attend a court-ordered mediation conference.

The relevant facts are as follows. Appellant was co-counsel for the plaintiff in a claim against Marriott Hotels and Montgomery Elevator Company. In June 1994, the parties agreed to a settlement of plaintiff's claim, and the closing documents were forwarded to appellant's office in July. Appellant was

---

* Bishop, J., now retired, participated in the hearing and decision of this case while an active member of this Court; after being recalled pursuant to the Constitution of Maryland, Article IV, Section 3A and 18(b), he also participated in the adoption of this opinion.

unable to contact the plaintiff, a nonresident, and the settlement papers were never executed. By letter dated October 3, 1994, appellant notified appellees of his inability to locate his client.

The Circuit Court for Montgomery County had previously issued an order for mandatory mediation dated August 16, 1994, noting therein that the case was scheduled for trial on October 31. The mediation conference was scheduled for 9:00 a.m., Thursday, October 13, 1994, at the courthouse. In pertinent part, the Order provided:

1. Upon receipt of this Order, the parties or counsel shall contact each other immediately to confirm calendars. *Claim of not receiving notice shall not constitute reason for cancellation.*

. . . . .

3. Personal attendance at the mediation conference and good faith participation is mandatory for all attorneys in this case. . . .

. . . . .

5. If a settlement is reached prior to the mediation date, the Assignment Office must be notified immediately. . . .

6. Parties and attorneys are put on notice that *failure to attend and participate in good faith* in the mandatory mediation conference without further Court Order cancelling or excusing such attendance *could result in the imposition of sanctions.* Sanctions could take the form of attorneys' fees and costs to the other side as well as findings of contempt with resulting penalties.

(Emphasis in the original.)

Counsel for appellees appeared for the conference on October 13. Appellant did not appear; neither did he inform anyone that he would not appear. Without the benefit of any motion, counsel for appellees appeared before Judge Pincus, seeking sanctions for appellant's unexplained absence, including dismissal of the action. The court inquired if counsel had attempted to contact appellant and counsel stated that they

had not done so,[1] but that a clerk in Judge Weinstein's office had attempted to locate appellant without success. The court commented that the Assignment Commissioner who delivered the file to the court had also been unable to reach appellant by telephone. Judge Pincus then assessed counsel fees of $750.00 against appellant after declining to dismiss the case "absent a rule that would allow me to dismiss it for failure to appear at a mediation conference."

Counsel for appellees notified appellant by letter of the $750.00 sanction, suggesting that appellees would forego enforcement of the sanction if a stipulation of dismissal of the underlying case could be executed before the October 19 calendar call. Appellant neither responded nor appeared at the calendar call and the case was dismissed at that time by the court. Appellant's subsequent efforts to reinstate the case were denied by the court.

The $750.00 sanction was not paid and appellees filed a show cause motion that was heard by the court on June 8, 1995. The trial court did not hold appellant in contempt at the show cause hearing, but instead entered the $750.00 assessment as a judgment, and appellant filed this appeal. Appellant's explanation for his failure to attend was that he was unaware of the proposed conference. He alleged that the entire case was handled by his co-counsel, who went on maternity leave after the settlement had been agreed upon, and appellant believed his only function was to obtain his client's signature on the settlement documents. The firm, however, received notice of the conference.

Appellant raises the following issues:

1.  Did the court have authority summarily to award counsel fees to opposing counsel for failure of counsel to appear for a court-ordered mediation?

---

1. Counsel did not inform the court that settlement had been agreed upon but appellant had been unable to locate his client.

2. Was it error for the court to enter judgment and refuse to consider redressing the earlier erroneous imposition of the sanction?

■ Before considering these substantive issues, there is a preliminary question that needs to be addressed: whether those issues are properly before this Court.

The initial assessment of $750 by Judge Pincus was made on October 14, 1994. It was reflected in a written order signed by the judge that day and docketed three days later. The order stated that "Charles M. Tobin, Esquire, counsel for the Plaintiff, be and is hereby sanctioned, assessed and shall pay the sum of seven hundred fifty dollars ($750.00), as attorneys' fees, payable within 30 days from the date of this Order, to counsel for Defendants."

In *Simmons v. Perkins*, 302 Md. 232, 486 A.2d 1192 (1985), the Court held that an order such as this, when entered against a party under former Md. rule 604b (current Rule 1–341) was not immediately appealable under Md.Code, Cts. & Jud.Proc.Art. § 12–303(3)(v), as an order for the payment of money, because it was not "equitable in nature" and did not "proceed directly to the person so as to make [him] directly and personally answerable to the court for noncompliance." 302 Md. at 236, 486 A.2d 1192. As a result, "imprisonment for contempt is not available to the trial court for any violation of its order that [the party] pay money under Md.R. 604 b." *Id.*

That view, as to sanctions imposed against parties to the action, was confirmed in *Yamaner v. Orkin*, 310 Md. 321, 529 A.2d 361 (1987), and *Blake v. Blake*, 341 Md. 326, 670 A.2d 472 (1996). In *Yamaner*, the Court also held that such an order, when directed against a party, could not be immediately appealed under the collateral order doctrine, although, in a footnote, it expressly reserved judgment on "the appealability under the collateral order doctrine of a sanctions order which is directed to counsel." 310 Md. at 327 n. 7, 529 A.2d 361. The Court noted a split among some of the federal circuit courts when considering appeals by attorneys from sanction orders entered under Fed.R.Civ.P. 11.

In *Newman v. Reilly*, 314 Md. 364, 550 A.2d 959 (1988), the Court held that an attorney could appeal from an order entered under Md. Rule 1–341 after final judgment had been entered in the case. As the assessment in *Newman* was made at the time the trial court dismissed the plaintiff's complaint, there was no occasion in that case to consider whether, had the assessment been made at an earlier point in the litigation, an appeal could have been taken by the attorney under the collateral order doctrine.

Judge Pincus did not purport to base the assessment on Rule 1–341, for maintaining or defending a proceeding in bad faith or without substantial justification. He imposed it, instead, for appellant's disobedience of a court order to attend a mediation conference. The underlying rationale for the assessment, however, would seem to be essentially the same, at least for purposes of determining whether it is appealable by appellant under the collateral order doctrine. Assuming that to be the case, it would present the interesting question of whether, if such an order *were* immediately appealable under the collateral order doctrine, an immediate appeal would *have* to be taken and not delayed until final judgment in the underlying action. One necessary component or element of the collateral order doctrine is that the order be effectively unreviewable if not immediately appealable; it would be anomalous, indeed, to conclude that the order satisfies that test but that the attorney can nonetheless wait until the case is over to appeal.

Fortunately, we do not need to resolve that issue in this case. Whether the assessment, as ordered by Judge Pincus on October 14, 1994, could have been appealed under the collateral order doctrine, it surely became appealable when reduced to a money judgment on June 8, 1995. That order gave it a quality it did not formerly possess; it became a lien on any land owned by appellant and subjected his personalty to seizure through writs of attachment. Appellant's notice of appeal was filed within 30 days after entry of the judgment on the docket; therefore, the issues subsumed in that judgment are properly before us. It is regrettable, however, in light of

the nature of his attack on the assessment, that appellant did not raise these issues earlier in the circuit court, but chose instead to wait until a proceeding was brought to hold him in contempt of court to challenge the validity of the underlying assessment. Prudence, it seems to us, would have suggested a motion for Judge Pincus to reconsider his ruling.

### *The Merits*

■ By Order dated June 7, 1994, the Court of Appeals, having considered proposed rule changes submitted by the Standing Committee on Rules of Practice and Procedure in its 124th report, rescinded Rule 2–504 and adopted new Rules 2–504, 2–504.1 and 2–504.2, effective October 1, 1994. On the same date, the Court adopted proposed amendments to Rule 1211. These changes have been characterized as "Management of Litigation" rules designed to expedite and control the orderly flow of civil litigation in the circuit courts.

The heart of the program is the development of systems for differentiated case management authorized by Rule 1211b(1), which states, in pertinent part, as follows:

"The County Administrative Judge shall develop and, upon approval by the Chief Judge of the Court of Appeals, implement and monitor a case management plan for the prompt and efficient scheduling and disposition of actions in the circuit court. The plan shall include a system of differentiated case management in which actions are classified according to complexity and priority and are assigned to a scheduling category based on that classification."

In furtherance of the objectives set forth in Rule 1211, Rule 2–504 provides, generally, that the court may direct all parties to appear before it for a conference before trial. The matters to be considered include a brief statement of the facts relied upon by each party in support of or in defense of a claim, limitation of issues, identification of records to be offered in evidence, a listing of expert witnesses and their specialties, and any other relevant matter the parties wish to raise at the conference.

Rule 2–504 also provides for a scheduling order in civil cases, including those in which no scheduling conference is to be held. The purpose of the scheduling order is to establish dates for the completion for discovery, for the filing of dispositive motions, and for the resolution for any other matter pertinent to the management of the case. A scheduling order may, as this one did, actually set a date for trial. The parties and the court are entitled to rely on the trial date set in a scheduling order in arranging their respective schedules, but, necessarily, that date becomes reliable in reality only if there is substantial compliance with the antecedents to it.

Resort to an available alternate dispute resolution mechanism is, increasingly, an important aspect of litigation management and is expressly authorized by Rule 2–504(b)(2)(D). Indeed, when proposing that provision to the Court of Appeals as part of its 124th Report, the Court's Standing Committee on Rules of Practice and Procedure called special attention to it, noting that "[t]his proposal really has the most potential for coming to grips with the ever-increasing caseload in the circuit courts and the pressure on the courts to move their dockets." The courts are aware that those mechanisms result in the settlement of many civil cases, and they rely on the efficacy of those mechanisms to pare significantly the number of cases that actually will need to be tried. If parties or their attorneys are free to disregard such referrals, those mechanisms will not achieve their purpose, more cases will linger in the system, and more will need to be tried. Pre-set trial dates will become increasingly unrealistic and unreliable, and the whole case management plan developed by the court under Md. Rule 1211b will be jeopardized. The courts have a right to insist on at least substantial, if not strict, compliance with their scheduling orders. *See Betz v. State,* 99 Md.App. 60, 635 A.2d 77 (1994).

The issue here, however, as in *Betz,* is not the validity of the scheduling order or the direction therein that the parties and their attorneys report for a mediation conference, but rather the remedy or sanction imposed for the violation of that direction.

As we indicated, the court order referring the case for mediation specifically provided for the assessment of attorney's fees if the parties or their attorneys failed to appear and participate in good faith in the mediation session. The issue raised by appellant is whether there is any underlying authority for the court to threaten and ultimately impose such a sanction and, if so, whether the sanction can be so summarily imposed, as it was in this case.

The scheduling order at issue here, though resting principally on the authority of Rule 2–504, was also part of the case management plan developed by the county administrative judge pursuant to Md. Rule 1211b. Rule 1211b was proposed by the Court of Appeals as part of the Rules Committee's 124th Report and was considered by the Court of Appeals in conjunction with the proposed revisions to Rules 2–504 and 2–504.1. Nothing was said in the initial Report of the Committee about sanctions for the violation of a scheduling order entered pursuant to Rule 2–504, although the matter had been discussed briefly in the Rules Committee. The Committee was aware that a somewhat similar scheme had been adopted by the federal courts through revisions to Fed.R.Civ.P. 16 and that, as part of the federal approach, sanctions were expressly authorized. Rule 16(f) provides, in relevant part, that, if a party or an attorney fails to obey a scheduling order, the court, in addition to or in lieu of other sanctions authorized under Rule 37(b)(2), "shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with the rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust."

After the Court of Appeals had given preliminary consideration to the Committee's 124th Report and indicated a desire for changes in some of the recommendations, the Committee, on December 15, 1993, submitted a supplement to its Report, noting therein:

"One item that was not included in the 124th Report, but to which the Court may wish to give some thought, is an

enforcement mechanism for the kinds of court orders envisioned by the new 'hands-on' procedure."

The Committee informed the Court that some judges had resorted to the contempt power to sanction lawyers for violating scheduling orders, but that it was possible to achieve the same result without the taint of a contempt finding by using Rule 1–341 or something similar to it.[2] In that regard, the Committee attached a copy of Fed.R.Civ.P. 16(f) and advised that the Arizona Supreme Court had recently adopted a similar rule allowing, as a sanction, "payment of an assessment to the clerk of the court."

Notwithstanding this information, the Court of Appeals declined to adopt such a mechanism, apparently preferring to see if the new procedure would work effectively without such sanctions. There is no indication in the record of the proceedings before the Court that it believed a comparable authority was inherent or implicit and thus did not need to be expressed. The court was certainly aware that, in instances when it desired to permit reimbursement of expenses and attorneys' fees as a sanction for violating a court order, it conferred that authority expressly. *See, e.g.,* Md. Rules 2–433 and 8–206(e), allowing an award of attorney's fees for failure to comply with orders or procedures governed by those rules.

In the face of that history, we are unwilling to find some inherent authority to award sanctions of this kind for unexplained violations of a scheduling order. Except in the most extraordinary case, the Court has been consistently unwilling to allow trial courts to "shift litigation expenses based on relative fault," *Zdravkovich v. Bell Atl–Tricon Leasing,* 323 Md. 200, 212, 592 A.2d 498 (1991), and in those cases in which it has chosen to do so on a systematic basis, it has made express provision in the rules. We therefore conclude that

---

**2.** Also included in the 124th Report, but not adopted by the Court, were proposed amendments to Rule 1–341. Those particular amendments were not intended to expand the rule to cover mere violations of scheduling orders, but dealt rather with the procedure to be followed in ordering reimbursements under the rule.

there was neither a general inherent authority nor any specific authority under Rule 2–504 or Rule 1211b for the trial court to impose the sanction.

■ That leaves two other possible sources of authority—Rule 1–341 and the contempt power—neither of which can justify the assessment in this case. Rule 1–341 allows reimbursement of attorney's fees only upon a finding that the attorney or party maintained or defended a proceeding in bad faith or without substantial justification. No such finding was made by Judge Pincus, or any other judge, and for that reason alone the rule cannot justify the assessment against appellant.

■ Nor, for the reasons stated in *Betz v. State, supra*, 99 Md.App. 60, 635 A.2d 77, can the assessment be regarded as a valid exercise of the contempt power. As we pointed out there, 99 Md.App. at 66, 635 A.2d 77, while the failure to obey a court order may constitute a contempt if the failure is deliberate, "[i]t is not the mere failure itself that is the contempt ... but rather the intent behind and effect of that failure." No finding was made by Judge Pincus that appellant's failure to attend the mediation sessions was deliberate or motivated by a contemptuous disregard for the court's direction. All that the judge knew was that appellant had been ordered to attend and that he failed to do so. In the absence of a show cause hearing, that is not enough even for a constructive contempt, and it certainly does not suffice as a direct contempt.

We shall reverse the judgment entered by the trial court on June 8, 1995, which was based upon the earlier sanction levied by Judge Pincus. In assessing the costs herein, we note that appellant took no action concerning the October 13, 1994, sanction until appellees obtained an order for a show cause hearing, which was held on June 8, 1995. The delay in resolving this relatively uncomplicated matter was primarily due to appellant's failure to take any action to challenge the court's order or to respond to inquiries by appellees concerning the sanction. We exercise our discretion and assess the costs of this proceeding to appellant, whose initial inattention

to the status of this case triggered the controversy and whose failure to take any timely remedial action perpetuated it. Md. Rule 8–607; *see also Andre v. Montgomery County Personnel Bd.,* 37 Md.App. 48, 375 A.2d 1149 (1977).

JUDGMENT REVERSED.

COSTS TO BE PAID BY APPELLANT.