60 A.3d 72

STATION MAINTENANCE SOLUTIONS, INC.

v.

TWO FARMS, INC.

No. 2039, Sept. Term, 2011.

Court of Special Appeals of Maryland.

Jan. 24, 2013.

Patricia M. Thornton (Sean V. Werner, Bacon, Thornton & Palmer, LLP, on the brief) Greenbelt, MD, for appellant.

Howard Goldberg (Sharon K. Engelhard, Goldberg & Banks, PC, on the brief) Baltimore, MD, for appellee.

Panel : MEREDITH, WATTS, JAMES R. EYLER (Retired, Specially Assigned), JJ.

WATTS, J.

Appellant, Station Maintenance Solutions, Inc., appeals the Circuit Court for Baltimore County's entry of a default judgment in favor of appellee, Two Farms, Inc. d/b/a Royal Farms, as a sanction for an alleged violation of a scheduling order by appellant's insurer, Mid–Continent. Appellant noted an appeal raising five issues, which we rephrase as follows: [1]

---

1. Appellant listed five issues as follows:

   I.  Whether the trial court had the authority, under Maryland law, to enter a default judgment against [appellant], and award significant monetary sanctions to [appellee], for the purported failure of [appellant]'s insurance carrier to attend a court-ordered settlement conference.

   II. Whether the trial court abused its discretion and failed to exercise its discretion by entering a default judgment against [appellant] as a sanction for the actions of a third party, and without making specific findings of fact or stating a legal basis for its ruling.

I.   Whether the circuit court had authority to enter sanctions against appellant for its insurer, Mid–Continent's, alleged violation of a scheduling order?

II.  Whether the circuit court abused its discretion in entering the sanction?

For the reasons set forth below, we answer question I in the negative and question II in the affirmative. We shall vacate the default judgment and remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 11, 2010, members of the Ratajczak family (the "Ratajczaks"), as individuals, filed suit against appellee in the circuit court, alleging that approximately 5,400 gallons of gasoline had leaked from appellee's underground storage tanks at its facility at 7950 Pulaski Highway, Baltimore, Maryland, and contaminated the Ratajczaks' adjacent single family home property. On June 28, 2010, the circuit court issued a Scheduling Order, scheduling a settlement conference for April 5, 2011.

On August 2, 2010, appellee filed a third party complaint against appellant.[2] Appellee requested "judgment by way of

---

III.  Whether the trial court abused its discretion by not affording [appellant] with the opportunity to respond to [appellee's] oral motion for a default judgment or to request a hearing on the issues raised by the oral motion.

IV.   Whether the trial court abused its discretion by awarding [appellee] a default judgment against [appellant] for [one] million dollars ($1,000,000.00) in compensatory damages without a hearing.

V.    Whether the trial court abused its discretion by ordering [appellant's insurance company] to appear at a court-ordered settlement conference with binding settlement authority up to the limits of its insurance policy, and then sanctioning [appellant] when it did not appear with the required authority.

**2.** Appellee also named Pundock Construction Co., Inc. ("Pundock") as a third party defendant. Appellee filed a separate third party complaint against Alger Electric, Inc. ("Alger"). On March 28, 2011, all claims against Pundock were dismissed by stipulation pursuant to Maryland Rule 2–506. Appellant contends on brief that, on November 8, 2011,

contribution and/or indemnification [against appellant] for all sums for which [appellee] may be adjudged liable to the [Ratajczaks], plus attorneys' fees and all costs and expenses[,]" "plus One Million Dollars ($1,000,000)" for each count alleging appellant's negligence and breach of contract in failing to maintain and inspect the underground tank which was the source of the leak. On October 22, 2010, appellant filed an answer and a request for a jury trial. On December 3, 2010, the Ratajczaks filed an Amended Complaint adding all third party defendants named by appellee, including appellant, as defendants. On January 6, 2011, appellee filed an amended answer to the third party complaint. On March 24, 2011, appellee filed an Amended Third Party Complaint against appellant, repeating the pleas from the third party complaint.

On March 29, 2011, the parties filed a Consent Motion to change the date of the April 5, 2011, settlement conference to October 18, 2011. On March 30, 2011, the circuit court granted the motion.

The parties agree that, on August 2, 2011, the Ratajczaks and appellee participated in a mediation conference, at which they agreed to settle the Ratajczaks' claims against appellee for $2,700,000, and the Ratajczaks agreed to assign their claims against appellant to appellee.[3] On August 4, 2011, appellant filed a Crossclaim against appellee, arguing that appellee's actions proximately caused the injury at issue in the underlying lawsuit, and that, as a result, appellant was "entitled to contribution and/or indemnification from [appellee] for all and/or part of any judgment entered against [appellant]." On August 22, 2011, appellee filed a Motion to Strike Crossclaim, asserting that the Ratajczaks were "in the process of assigning their claims against [appellant] to [appellee,]" and that, as a result, appellant "has no claims for contribution nor

---

all claims against Alger were dismissed. Neither company is a party to this appeal.

3. On August 25, 2011, the circuit court issued an order "approv[ing] the allocation of the settlement between [the Ratajczaks] and [appellee.]"

indemnity as the only claims being asserted against it are by [appellee]." On September 6, 2011, appellant filed an Opposition to Motion to Strike Crossclaim, arguing that, because it was unaware of the release language that would be used in the settlement agreements between appellee and other parties, and of whether appellee intended to pursue its assigned claim from the Ratajczaks, the Crossclaim/Counterclaim was a reasonable method to assert claims of contribution and indemnification against appellee.

On August 31, 2011, in response to a joint request by the parties, the circuit court issued a notice of hearing order moving the settlement conference from October 18, 2011, to September 27, 2011. On September 6, 2011, the circuit court issued a second order titled "Order to Attend Settlement Conference," providing as follows:

[Appellee] and [appellant] are hereby ordered to attend a settlement conference before [the circuit court] on Tuesday, September 27, at 9:00 a.m. The following conditions are imposed:

A senior officer or employee of [appellant]'s insurance carrier [Mid–Continent] must be present, with binding settlement authority up to the full limits of its policy.

A senior representative of [appellant] must be present with full settlement authority.

A senior representative of [appellee] must be present with full settlement authority.

On September 27, 2011, the settlement conference was conducted in the judge's chambers, not on-the-record in open court. It is undisputed that both parties and a representative of Mid–Continent attended the settlement conference, and that the representative of Mid–Continent was an independent third-party adjuster, not a "senior officer or employee ... with binding settlement authority up to the full limits of [the] policy" as ordered by the circuit court. On brief, appellant contends that a senior officer of Mid–Continent was not available to attend the settlement conference, and that appellant's counsel contacted appellee's counsel prior to the confer-

ence to request a continuance, but that appellee's counsel "would not consent." Appellant contends that the following occurred at the settlement conference:

[The circuit court] asked counsel for [appellee] what sanction he would like the [circuit] court to enter for Mid[-]Continent's "violation" of the September 6 Order. [Appellee's counsel] initially requested that the [circuit c]ourt award him attorney's fees and costs, but then withdrew this request, instead orally moving for a default judgment against [appellant] in favor of [appellee] in the amount of one million dollars ($1,000,000.00). Before granting [appellee's counsel]'s oral motion, [the circuit court] requested that counsel for [appellant] contact Mid[-]Continent to inform them that she would be imposing the requested sanction against [appellant]. While [appellant's counsel] was speaking to a representative from Mid[-]Continent by phone, [the circuit court] granted [appellee's] oral request for a default judgment against [appellant], entering judgment against [appellant] in favor of [appellee] for one million dollars ($1,000,-000.00).

In contrast, appellee contends that the following occurred at the settlement conference:

At the settlement conference, [the circuit court] questioned [appellant]'s counsel of record about whether she had, in fact, notified [Mid–Continent] of the court's order requiring its attendance. After confirming that Mid–Continent had indeed received a copy of the order; that it knew it was required to be in attendance; and that it had nevertheless decided it would not send a senior officer or employee to attend the settlement conference, [the circuit court] considered entering a default judgment against [appellant] in the amount of its available insurance. Counsel for [appellee] moved for a default judgment and advised the court that if it could resolve the case on that basis, [appellee] would be willing to accept judgment in the amount of $1 million. The [circuit] court then granted a default judgment against [appellant] in the amount of $1 million, the limits of [appellant]'s policy with Mid–Continent. [Appellant's] counsel of

record was present at the time the default judgment was entered by [the circuit court]. However, [appellant's] counsel of record never requested to place the settlement conference "on[-]the[-]record" by having a court reporter attend or by using a mechanical recording system[.] ... Despite the fact that [appellant's] counsel was present when [the circuit court] entered the default judgment against [appellant], [appellant's] counsel never requested to argue "on[-]the[-]record" that the default judgment should not be entered.

(Record citations omitted). The circuit court docket entries contain the following information as to the entry of judgment by default in favor of appellee:

Sept. 27, 2011 [ ] Settlement Conference Held Today on (Sept 6, 2011) This Court Signed an Order to Attend Settlement Conference. Attorney [ ] Who Represented [appellant] Provided a Copy of The Court Orders to [appellant] and [appellant's] Insurance Company [Mid–Continent], and Advises That She Has Spoken To [appellant and Mid–Continent] By Telephone and Represents To [the circuit court] That They Are Aware That They Are Requested to be Present Today. [Appellant] Has a Representative Available Here Today [ ]. A Senior Officer [and] Employee of [Mid–Continent] is Not Present With Binding Settlement Authority Up To The Full Amount of Its Policy. Judgment is Hereby Entered in Favor of [appellee and against appellant] in The Amount of One Million ($1,000,000.00) By Default, [and] Interest At The Legal Rate of Interest And All Open Court Costs. [Appellee] Waives All Claims in Excess of ($1,000,000.00) For Its Claim Against [appellant].

The circuit court did not issue a written order or opinion.[4]

On September 27, 2011, appellant filed a Motion to Strike Order of Default and to Recuse. On October 6, 2011, appel-

---

4. On November 1, 2011, the circuit court issued a document titled "Judgment," reflecting the entry of default judgment against appellant in the amount of $1,000,000. The document provided no explanation as to the reasons for the judgment.

lant withdrew the motion. On the same day, appellant filed a Notice of Appeal of the default judgment.

On October 10, 2011, appellee's counsel took the deposition of Robert L. Ferguson, Jr., an attorney retained by appellant. Ferguson testified regarding his communication with Mid–Continent on appellant's behalf as follows: [5]

[Appellee's Counsel]: ... [H]ave you taken the position with Mid–Continent that Mid–Continent should pay its full policy limits in order to settle the claims being asserted by [appellee] and [the Ratajczaks]?

[Ferguson]: Whatever it will take to settle it, up to its policy limits.

[Appellee's Counsel]: And are you familiar with whether there is a substantial excess exposure on behalf of [appellant] in this litigation?

[Ferguson]: I understand there to be a significant excess. I understand that [appellee] has settled with the [Ratajczaks] in that case already for $2.7 million, and in addition, has sustained its own damages.

[Appellee's Counsel]: Are you familiar with the fact that a judgment has been entered in this litigation against [appellant]?

[Ferguson]: Yes, I am.

[Appellee's Counsel]: To your knowledge, did [appellant] consent to the entry of that judgment?

[Ferguson]: It did not consent, to my knowledge.

[Appellee's Counsel]: What is your understanding as to why the judgment was entered?

[Ferguson]: My understanding is that the judgment was entered as sanctions for the failure of [appellant's] insurer, Mid–Continent [ ], to comply with an Order of Court requir-

---

5. At oral argument, counsel for appellant advised that appellant retained Ferguson as its personal attorney upon notification by Mid–Continent that the Ratajczaks sought damages in excess of the insurance policy limits. Ferguson was not present at the settlement conference. A transcript of the deposition was filed with the circuit court on October 12, 2011.

ing that a senior member of the company with authority to settle the case attend a settlement conference that had been scheduled by the Circuit Court for Baltimore County on September 27, 2011.

[Appellee's Counsel]: Now, are you familiar with the fact that a motion to strike that judgment was filed on behalf of [appellant] by counsel appointed by Mid–Continent?

[Ferguson]: Yes.

[Appellee's Counsel]: Have you taken a position, or did you take a position on behalf of [appellant] with Mid–Continent as to whether Mid–Continent should withdraw that motion and allow the judgment to stand?

[Ferguson]: Yes, I did.

[Appellee's Counsel]: What position did you take?

[Ferguson]: I communicated with Mid–Continent requesting that it withdraw the motion to strike the judgment so that the judgment would stand, and protect its insured from any risk of excess verdict. I also should add that I asked that the insurer pay the judgment so that it could be entered and satisfied.

On October 20, 2011, appellee filed in this Court a Motion to Dismiss Appeal, arguing that, because "[t]he claims asserted against Alger by [the Ratajczaks] and [appellee] have not been resolved[,]" the default judgment against appellant was not a final, appealable judgment. On November 9, 2011, appellant filed in this Court a Response to Motion to Dismiss Appeal and Stipulation of Dismissal Without Prejudice. On November 29, 2011, this Court dismissed the appeal without prejudice.

On October 25, 2011, the parties filed a Consent Motion to Order the Entry of a Final Judgment in response to appellee's Motion to Dismiss Appeal "because there are open and unresolved claims." On October 25, 2011, the circuit court issued an order directing entry of a final judgment against appellant. On October 26, 2011, appellant filed a second notice of appeal. On October 31, 2011, the circuit court entered the default

judgment against appellant. On November 22, 2011, appellant filed this appeal.

## DISCUSSION

### I.

#### (a) Contentions

Appellant contends that the circuit court lacked authority to impose a "case-ending sanction" against it for the actions of its insurer. Appellant argues that case-ending sanctions are "generally reserved for conduct that is repeated, willful, and egregious, and which causes significant prejudice to other litigants or to the court." Appellant asserts that it did not engage in such conduct.

Appellee responds that the issue is not preserved for appellate review, as appellant failed to preserve on-the-record any objection to the entry of the default judgment and withdrew the motion to strike. As to the merits, appellee contends that the circuit court had authority to enter the default judgment, as circuit courts have authority to regulate the proceedings before them and may impose sanctions to enforce that authority. Alternatively, appellee argues that any error in entering the default judgment was harmless, as appellant "has not suffered any prejudice as a result of the default judgment because the judgment does not exceed the limits of [appellant]'s commercial general liability insurance policy with Mid–Continent."

In a reply brief, appellant contends that, because the circuit court imposed the sanction summarily in chambers, it lacked an opportunity to object to the default judgment and, thus, did not forfeit appellate review of the default judgment by not objecting on-the-record. Appellant asserts that it did not forfeit the right to appellate review by withdrawing the motion to strike, as it "could not avail itself of [a] motion to set aside the default order" because the circuit court never entered a default order prior to the default judgment as required by the Maryland Rules.

Appellant contends that the circuit court is prohibited from imposing a monetary sanction as the penalty for violation of a scheduling order and argues that it engaged in no conduct warranting any sanction at all. Appellant asserts that the circuit court's error in entering the default judgment was not harmless.

### (b) Standard of Review

■ "[W]here [a trial court] order involves an interpretation and application of Maryland statutory and case law, [an appellate court] must determine whether the [trial] court's conclusions are 'legally correct' under a *de novo* standard of review." *Jackson v. 2109 Brandywine, LLC,* 180 Md.App. 535, 567, 952 A.2d 304, *cert. denied,* 406 Md. 444, 959 A.2d 793 (2008) (citation and internal quotation marks omitted).

### (c) Law

### (i) Sanctions

■ Maryland Rule 2–504 provides, in pertinent part, as follows:

(a) Order required.

(1) Unless otherwise ordered by the County Administrative Judge for one or more specified categories of actions, the court shall enter a scheduling order in every civil action, whether or not the court orders a scheduling conference pursuant to Rule 2–504.1.

. . .

(b) Contents of scheduling order.

. . .

(2) Permitted. A scheduling order may also contain:

. . .

(C) a specific referral to or direction to pursue an available and appropriate form of alternative dispute resolution, including a requirement that individuals with authority to settle be present or readily available for consultation during the alternative dispute resolution proceeding, provided that

the referral or direction conforms to the limitations of Rule 2–504.1(e);

. . .

(F) a further scheduling conference or pretrial conference date; [and]

. . .

(I) any other matter pertinent to the management of the action.

The Rule was enacted to enable circuit courts "to expedite and control the orderly flow of civil litigation[.]" *Tobin v. Marriott Hotels*, 111 Md.App. 566, 572, 683 A.2d 784 (1996). "[A]lthough the Rule does not, by its terms, provide for sanctions, the case law of Maryland makes the imposition of sanctions for the violation of a scheduling order appropriate." *Manzano v. S. Md. Hosp.*, 347 Md. 17, 29, 698 A.2d 531 (1997) (citations omitted); *see also Dorsey v. Nold*, 362 Md. 241, 256, 765 A.2d 79 (2001) ("Just as there are sanctions for the violation of the discovery rules, sanctions are available for the violation of directives in scheduling orders, although they are not specified in any rule." (Citation omitted)). "For a trial court to permit a party to deviate [ ] from a scheduling order without a showing of good cause is, on its face, prejudicial and fundamentally unfair to opposing parties, and would further contravene the very aims supporting the inception of Rule 2–504 by decreasing the value of scheduling orders to the paper upon which they are printed." *Naughton v. Bankier*, 114 Md.App. 641, 654, 691 A.2d 712 (1997). "Indeed, if our courts could not enforce their scheduling orders through the threat and imposition of sanctions, the entire process of expedited case management would be at risk." *Manzano*, 347 Md. at 29, 698 A.2d 531.

In *Tobin*, 111 Md.App. at 567, 577, 683 A.2d 784, this Court reversed the imposition of a $750 sanction against a party's counsel in the underlying litigation, payable to opposing counsel, for failure to attend a mediation conference ordered by the

circuit court under Maryland Rule 2–504.[6] In the order imposing sanctions, the circuit court stated that "Tobin, . . . is hereby sanctioned, assessed and shall pay the sum of seven hundred fifty dollars ($ 750.00), as attorneys' fees[.]" *Id.* at 570, 683 A.2d 784. Although finding that the circuit court has authority to "insist on at least substantial, if not strict, compliance with their scheduling orders[,]" this Court held that the sanction was improper because it took the form of attorneys' fees. *Id.* at 573, 575, 683 A.2d 784. We explained the history of Rule 2–504 as follows:

> The Committee was aware that a somewhat similar scheme had been adopted by the federal courts through revisions to Fed.R.Civ.P. 16 and that, as part of the federal approach, sanctions were expressly authorized. Rule 16(f) provides, in relevant part, that, if a party or an attorney fails to obey a scheduling order, the court, in addition to or in lieu of other sanctions authorized under Rule 37(b)(2), "shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with the rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justi-

---

**6.** At the time *Tobin* was decided, Maryland Rule 2–504 read, in pertinent part, as follows:

(a) Order Required

(1) Unless otherwise ordered by the County Administrative Judge for one or more specified categories of actions, the court shall enter a scheduling order in every civil action, whether or not the court orders a scheduling conference pursuant to Rule 2–504.1.

. . .

(b) Contents of Scheduling Order

. . .

(2) Permitted

A scheduling order may also contain:

. . .

(D) a specific referral to or direction to pursue an available and appropriate form of alternative dispute resolution, provided that a court may not require the parties to submit to binding arbitration unless they agree in writing or on the record to that process;

. . .

(F) a further scheduling conference or pretrial conference[ date; and

(G) any other matter pertinent to the management of the action.

Md. R. 2–504 (1996 Repl.Vol.).

fied or that other circumstances make an award of expenses unjust."

. . .

Notwithstanding this information, the Court of Appeals declined to adopt such a mechanism, apparently preferring to see if the new procedure would work effectively without such sanctions. There is no indication in the record of the proceedings before the Court that it believed a comparable authority was inherent or implicit and thus did not need to be expressed. The court was certainly aware that, in instances when it desired to permit reimbursement of expenses and attorneys' fees as a sanction for violating a court order, it conferred that authority expressly. *See, e.g.*, Md. Rules 2–433 and 8–206(e), allowing an award of attorney's fees for failure to comply with orders or procedures governed by those rules.

*Id.* at 574–75, 683 A.2d 784. We concluded that "[e]xcept in the most extraordinary case, the Court has been consistently unwilling to allow [circuit] courts to shift litigation expenses based on relative fault, and in those cases in which it has chosen to do so on a systematic basis, it has made express provision in the rules." *Id.* at 575, 683 A.2d 784 (citation and internal quotation marks omitted). We held that the circuit court had "neither a general inherent authority nor any specific authority under Rule 2–504" to impose "sanctions of this kind"—*i.e.* attorneys' fees. *Id.* at 575–76, 683 A.2d 784.

In *Naughton,* 114 Md.App. at 647, 658–59, 691 A.2d 712, we reversed a sanction of $350 in attorneys' fees levied on a party for the failure of his insurance company to send an agent to a settlement conference. In *Naughton,* we did not address the circuit court's authority to sanction a party for the violation of a Rule 2–504 scheduling order by an insurer. Rather, our holding was confined to the propriety of "the settlement judge's imposition of attorney's fees" as a sanction. *Id.* at 659, 691 A.2d 712.

In *Manzano,* 347 Md. at 27, 29–30, 698 A.2d 531, the Court of Appeals reversed the dismissal of a medical malpractice claim, holding that, although the chair of an arbitration panel

possessed "the authority to sanction Petitioner for violating the scheduling order[,]" a sanction must be proportionate to the corresponding violation, and as a result, case-ending sanctions are disfavored.[7] The Court stated that "[t]he dismissal of a claim[ ] is among the gravest of sanctions, and as such, is warranted only in cases of egregious misconduct such as willful or contemptuous behavior, a deliberate attempt to hinder or prevent effective presentation of defenses or counterclaims, or stalling in revealing one's own weak claim or defense." *Id.* at 29–30, 698 A.2d 531 (internal citations and quotation marks omitted).[8]

In *Dorsey,* 362 Md. at 259–60, 765 A.2d 79, the Court of Appeals reversed the circuit court's exclusion of a witness's testimony as a sanction for violation of a scheduling order requiring all expert witnesses to be identified by a specified date. The Court held that the circuit court's classification of the excluded witness as an expert whose opinion was developed in preparation for litigation was inaccurate. *Id.* The Court reasoned that, because the witness in question, although a medical expert, had developed his opinion regarding the cause of death while performing an autopsy on the petitioners' deceased child without the consideration of future litigation, the petitioners' failure to inform the respondent that they wished to call the witness by the date listed in the scheduling order for compliance with Maryland Rule 2–402(e)(1) [9] was not

---

7. In *Manzano,* 347 Md. at 21, 698 A.2d 531, the Court of Appeals considered dismissal of a claim by the Health Claims Arbitration Office (the "HCAO"). Although observing that Maryland Rule 2–504, which was adopted in 1994, did not affect its analysis as the Petitioner's claim was dismissed in 1992, the Court of Appeals stated that its holding "would be the same" if Maryland Rule 2–504 were applicable. *Id.* at 28, 698 A.2d 531.

8. Subsequent to *Tobin, Naughton,* and *Manzano,* Maryland Rule 2–504 was amended to reflect that Maryland Rule 1211, a rule concerning the County Administrative Judge's authority to develop a case management plan, had been renumbered to Maryland 16–202. No other alterations were made to Rule 2–504.

9. In *Dorsey,* 362 Md. at 253, 765 A.2d 79, the Court explained the scope of Maryland Rule 2–402(c)(1) as follows:

a violation of the scheduling order. *Id.* at 245, 259–60, 765 A.2d 79. Although "sanctions are available for the violation of directives in scheduling orders," the Court of Appeals determined it inappropriate for the circuit court to impose sanctions in that case. *Id.* at 256, 260, 765 A.2d 79.

In *Maddox v. Stone,* 174 Md.App. 489, 497, 508–09, 921 A.2d 912 (2007), this Court reversed the circuit court's exclusion of an expert witness as a sanction for violation of a scheduling order.[10] We held:

> [Although] the governing principle [in imposing sanctions] is that the appropriate sanction for a discovery or scheduling order violation is largely discretionary[,] . . . the more draconian sanctions, of dismissing a claim or precluding the evidence necessary to support a claim, are normally reserved for persistent and deliberate violations that actually cause some prejudice, either to a party or to the court.

*Id.* at 501, 921 A.2d 912 (internal citations and quotation marks omitted). Noting that "[s]cheduling orders are but the means to an end, not an end in and of themselves[,]" we concluded that case-ending sanctions "should be reserved for egregious violations of the [circuit] court's scheduling order,

---

[Maryland Rule 2–402](e)(1), deal[s] with experts intended to be called as witnesses, [and] discovery of the findings and opinions of such experts, otherwise discoverable and "acquired or developed in anticipation of litigation or for trial[.]"

10. When *Maddox* was decided, Maryland Rule 2–504 had been amended to provide, in pertinent part, as follows:

(b) Contents of Scheduling Order.

. . .

(2) Permitted. A scheduling order may also contain:

. . .

(D) a specific referral to or direction to pursue an available and appropriate form of alternative dispute resolution, including a requirement that individuals with authority to settle be present or readily available for consultation during the alternative dispute resolution proceeding, provided that the referral or direction conforms to the limitations of Rule 2–504.1(e);

. . .

(F) a further scheduling conference or pretrial conference date; and

(G) any other matter pertinent to the management of the action.

Md. R. 2–504 (2003 Repl.Vol.).

and should be supported by evidence of willful or contemptuous or otherwise opprobrious behavior on the part of the party or counsel." *Id.* at 507, 921 A.2d 912.

### (ii) Contempt

■ "When a party or circuit court is confronted with an uncooperative party, the party or circuit court may seek to compel the party's cooperation, or punish the party. Specifically, the party or circuit court may pursue direct [or constructive] civil or criminal contempt sanctions[.]" *Fisher v. McCrary Crescent City, LLC,* 186 Md.App. 86, 113, 972 A.2d 954 (2009), cert. denied, —— U.S. ——, 131 S.Ct. 637, 178 L.Ed.2d 476 (2010). In *Hermina v. Baltimore Life Ins. Co.,* 128 Md.App. 568, 580, 739 A.2d 893 (1999), this Court explained the distinction between civil contempt and criminal contempt as follows:

> A civil contempt proceeding is intended to preserve and enforce the rights of private parties to a suit and to compel obedience to orders and decrees primarily made to benefit such parties. These proceedings are generally remedial in nature and are intended to coerce future compliance. Thus, a penalty in a civil contempt must provide for purging. On the other hand, the penalty imposed in a criminal contempt is punishment for past misconduct which may not necessarily be capable of remedy. Therefore, such a penalty does not require a purging provision but may be purely punitive. In [Maryland], to these factors must be added the degree of proof required to establish a contempt—a civil contempt need be proved only by a preponderance of the evidence, while a criminal contempt must be shown beyond a reasonable doubt.

(Citation omitted).

■ " 'Direct contempt' means a contempt committed in the presence of the judge presiding in court or so near to the judge as to interrupt the court's proceedings." Md. R. 15–202(b). "Any contempt that is not a direct contempt—'where the judge must look at extrinsic evidence to determine that a contempt has been committed'—is a constructive contempt."

*Fisher,* 186 Md.App. at 115, 972 A.2d 954 (citations omitted); *see also* Md. R. 15–202(a) (" 'Constructive contempt' means any contempt other than a direct contempt."). "[I]n constructive contempt proceedings, the court must give the accused contemnor an opportunity to challenge the alleged contempt and show cause why a finding of contempt should not be entered." *Fisher,* 186 Md.App. at 119, 972 A.2d 954 (citation omitted).

Maryland Rule 15–206 controls the procedure for constructive civil contempt. In *Fisher,* 186 Md.App. at 117, 972 A.2d 954, we explained when a constructive civil contempt proceeding may be brought, stating:

> A party, the Attorney General, or the court may institute a constructive civil contempt proceeding when (1) the movant intends to file or filed the proceeding as a continuation of the original action, as opposed to a separate and independent action; (2) the movant seeks relief to benefit themselves or a party instead of punishing the alleged contemnor; (3) the acts complained of do not of themselves constitute crimes or conduct by the defendant so wilful or contumacious that the court is impelled to act on its own motion; and (4) the contempt is not a direct contempt.

(Footnote, citations, and internal quotation marks omitted). "Unless the court finds that a petition for contempt is frivolous on its face, the court shall enter an order providing for (i) a prehearing conference, or (ii) a hearing, or (iii) both. The scheduled hearing date shall allow a reasonable time for the preparation of a defense and may not be less than 20 days after the prehearing conference." Md. R. 15–206(c)(2). "The order, together with a copy of any petition and other document filed in support of the allegation of contempt, shall be served on the alleged contemnor pursuant to [Maryland] Rule 2–121 [controlling service of process in the circuit court] or, if the alleged contemnor has appeared as a party in the action in which the contempt is charged, in the manner prescribed by the court." Md. R. 15–206(d).

The procedure for constructive criminal contempt is controlled by Maryland Rule 15–205. In *Fisher*, 186 Md.App. at 120–21, 972 A.2d 954, we explained:

> The court, the State's Attorney, the Attorney General, or the State Prosecutor, depending on the circumstances, may institute a constructive criminal contempt proceeding when (1) the movant intends to file or filed the proceeding as a separate action as opposed to a continuation of the original action; (2) the alleged contemnor willfully violated or attempted to frustrate a court order, such that the alleged contemnor offended the dignity or process of the court; (3) the act was not a direct contempt; and (4) the movant seeks to punish the alleged contemnor for his act.

(Citations omitted). "An order filed by the court … shall contain the information required by Rule 4–202(a)[, controlling the contents of a charging document.] The order or petition shall be served, along with a summons or warrant, in the manner specified in Rule 4–212[, controlling service of a summons,] or, if the proceeding is in the Court of Appeals or Court of Special Appeals, in the manner directed by that court." Md. R. 15–205(d).

Pursuant to Maryland Rule 15–207(d)(1) and (2), in all proceedings for contempt for actions other than failure to pay spousal or child support,

> [w]hen a court or jury makes a finding of contempt, the court shall issue a written order that specifies the sanction imposed for the contempt. In the case of a civil contempt, the order shall specify how the contempt may be purged. In the case of a criminal contempt, if the sanction is incarceration, the order shall specify a determinate term and any condition under which the sanction may be suspended, modified, revoked, or terminated.

In *Betz v. State*, 99 Md.App. 60, 69, 62, 65–66, 635 A.2d 77 (1994), we reversed the circuit court's summary imposition of criminal contempt sanctions for violation of a scheduling order against a party's attorney in a civil action for failing to submit "a written statement containing or addressing 10 enumerated

categories of information" at least five days prior to a pretrial settlement conference, holding that the violation of the order could not be considered direct contempt. We explained that, "[although t]he failure of a person to obey an order of court may constitute a contempt if the person has notice of the order and the failure to obey is deliberate[, i]t is not the mere failure itself that is the contempt, [ ] but rather the intent behind and effect of that failure." *Id.* at 66, 635 A.2d 77 (citation omitted). We noted that there is "a strong public policy in favor of allowing a person ... to explain his action ... [even when it] involved essentially unambiguous conduct committed in open court in front of the judge ..., and the contumacious intent behind [the action] was clearly inferable." *Id.* at 67–68, 635 A.2d 77 (citation omitted).

Based on these principles, we reasoned that the circuit court in *Betz* abused its discretion in sanctioning the attorney, stating:

> [The circuit court] knew only that the statement[ ] had not been submitted and exchanged as required by [the] order.... [It] did not know, because [it] had not asked, why [Betz] had not submitted and exchanged her statement. The "why," however was an important element that needed to be considered before finding [ ] contempt, for it went to her intent.

*Id.* at 66–67, 635 A.2d 77.

In *Tobin*, 111 Md.App. at 567, 576, 683 A.2d 784, we held that sanctions against a party for his failure to attend a court-ordered mediation conference could not be upheld as direct or constructive contempt, explaining as follows:

> Nor, for the reasons stated in *Betz v. State, supra*, 99 Md.App. 60 [635 A.2d 77], can the assessment be regarded as a valid exercise of the contempt power.... No finding was made by [the circuit court] that appellant's failure to attend the mediation sessions was deliberate or motivated by a contemptuous disregard for the court's direction. All that the judge knew was that appellant had been ordered to attend and that he failed to do so. In the absence of a show

cause hearing, that is not enough even for a constructive contempt, and it certainly does not suffice as a direct contempt.

### (d) Analysis

Returning to the case at hand, we first address appellee's argument that appellant failed to preserve the issue for appellate review by not arguing in the circuit court that the court lacked authority to enter the default judgment. In this case, the default judgment is the final order of the circuit court, ending litigation of the underlying dispute between appellant and appellee. As such, appellant is not challenging an unappealable interlocutory decision by the circuit court. Rather, appellant is challenging the authority of the circuit court to enter a final, case-ending order. With certain exceptions not applicable here, the party against whom a final judgment is entered may appeal that judgment. Md.Code Ann., Cts. & Jud. Proc. § 12–301 ("Except as provided in § 12–302 of this subtitle, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court."). As a result, the question of whether the circuit court lacked authority to enter the default judgment in this case is properly before this Court.

As to the merits of appellant's argument, the circuit court most certainly has authority to sanction parties for violating scheduling orders. The cases that consider the question of the circuit court's authority to sanction a party for the violation of a scheduling order affirm that, although no sanctioning power is enumerated in Maryland Rule 2–504, circuit courts have inherent power to do so. *See Manzano,* 347 Md. at 29, 698 A.2d 531 ("Thus, although [Maryland] Rule [2–504] does not, by its terms, provide for sanctions, the case law of Maryland makes the imposition of sanctions for the violation of a scheduling order appropriate." (Citations omitted)); [11] *Dorsey,* 362 Md. at 256, 765 A.2d 79 ("[S]anctions are available

---

**11.** At oral argument, appellant contended that the Court of Appeals's holding in *Manzano* is not applicable in this case because in *Manzano* the Court considered a discovery violation, not a scheduling order violation. This assertion is contrary to the Court's holding in the

for the violation of directives in scheduling orders, although they are not specified in any rule." (Citation omitted)); *Maddox*, 174 Md.App. at 501, 921 A.2d 912 ("[T]he appropriate sanction for a . . . scheduling order violation is largely discretionary with the [circuit] court." (Citation and internal quotation marks omitted)). Accordingly, it is abundantly clear that the circuit court had authority to sanction a party for its violation of the order.

Although appellant argues that this Court's decisions in *Tobin* and *Naughton* stand for the proposition that circuit courts lack the authority to impose a monetary sanction for the violation of a scheduling order, we find no basis for that conclusion in the cases. Neither *Tobin* nor *Naughton* contains a discussion of the circuit court's power to sanction parties for violations of scheduling orders generally or its authority to impose a monetary sanction for the violation of a scheduling order. Rather, both cases address the question of whether attorneys' fees may be awarded as sanctions, and their holdings bar those sanctions which "shift litigation expenses[.]" *See Tobin*, 111 Md.App. at 575–76, 683 A.2d 784; *Naughton*, 114 Md.App. at 658–59, 691 A.2d 712. The sanction imposed in this case, a default judgment—a monetary award—does not fall within the scope of the holdings in *Tobin* and *Naughton.*

■ At oral argument, appellant contended that amendments to Maryland Rule 2–504, adopted between our opinions in *Tobin* and *Naughton* and the events of this case, negate the

---

opinion. In *Manzano*, 347 Md. at 27, 29, 698 A.2d 531, the Court of Appeals wrote that "the chair [person of the arbitration panel] did possess the authority to sanction Petitioner for violating **the scheduling order[,]**" and that "the case law of Maryland makes the imposition of sanctions for **the violation of a scheduling order** appropriate." (Emphasis added) (citations omitted). The single reference to a discovery violation in the opinion (stating that "[w]hether and in what manner to sanction a party for a discovery violation is generally left to the chair's discretion") comes after a discussion of the relationship between scheduling orders and discovery, and the Court's conclusion that "a panel chair is entitled to enforce the discovery deadlines contained in a scheduling order." *Id.* at 29, 698 A.2d 531.

imposition of monetary sanctions for scheduling order violations. We disagree. Since our decisions in *Tobin* and *Naughton,* Maryland Rule 2–504 has been amended in 1997, 1998, 2003, and 2007. The majority of the amendments have added items that the circuit court must or may include in a scheduling order. For example, in 2003, the language of Maryland Rule 2–504(b)(2)(D) was altered from allowing the circuit court to order a referral for alternative dispute resolution "provided that a court may not require the parties to submit to binding arbitration unless they agree in writing or on the record to that process[,]" to allowing the circuit court to order a referral for alternative dispute resolution "including a requirement that individuals with authority to settle be present or readily available for consultation during the alternative dispute resolution proceeding[.]" None of the amendments altered the purpose of the Rule—which is "to expedite and control the orderly flow of civil litigation in the circuit courts[,]" *Tobin,* 111 Md.App. at 572, 683 A.2d 784—nor made any reference to monetary sanctions. Thus, despite amendments to the Rule, circuit courts retain authority under Maryland Rule 2–504 to impose sanctions, including monetary sanctions, on parties that violate scheduling orders.

▐ We now address the critical question in this case: whether the circuit court had authority to impose a sanction against appellant based solely on the conduct of its insurer, Mid–Continent. In the cases discussing imposition of sanctions under Maryland Rule 2–504, Maryland appellate courts have not directly considered whether a circuit court may impose sanctions against a party for its insurance company's violation of a scheduling order.[12] We conclude that the circuit court lacks the authority to impose a sanction on a party for violation of a scheduling order based solely on the conduct of

---

**12.** In *Naughton,* 114 Md.App. at 647, 691 A.2d 712, the circuit court imposed a sanction against a party for the failure of his insurance company to send an agent to the settlement conference. In a brief discussion of the issue, we reversed the imposition of sanctions based on the form of the sanctions—attorneys' fees—and did not consider the issue of imposition of sanctions against the party solely for the insur-

the party's insurer. The circuit court's inherent authority to sanction parties under Maryland Rule 2–504 is based on the ability to regulate the proceedings before it in furtherance of the goal of efficient disposition of litigation. *See Naughton,* 114 Md.App. at 654, 691 A.2d 712 ("For a trial court to permit a party to deviate [ ] from a scheduling order without a showing of good cause is, on its face, prejudicial and fundamentally unfair to opposing parties, and would further contravene the very aims supporting the inception of Rule 2–504 by decreasing the value of scheduling orders to the paper upon which they are printed.").

The authority to sanction is grounded in the belief that a party will comply with the order in order to avoid imposition of a penalty against it. If an insurance company—or, for that matter, any person or entity—was aware that someone else would be punished for its violation of a court's scheduling order, the threat of sanctions would create no incentive for it to comply with an order of the court. At oral argument, appellee acknowledged that there was no indication that appellant was involved in or played any role in Mid–Continent's alleged violation of the scheduling order. Where, as in this case, there is no information that a party was complicit in its insurer's violation of the court order, the circuit court has no authority to sanction the party.[13]

Although the circuit court lacked authority to sanction appellant solely for Mid–Continent's violation of the schedul-

---

ance company's violation of the scheduling order. *Id.* at 658–59, 691 A.2d 712.

**13.** At oral argument, although appellee conceded that appellant was not responsible for the alleged violation of the scheduling order, appellee contended that, in *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 347 A.2d 842 (1975), the Court of Appeals held that a non-offending party may be sanctioned for the actions of a non-party insurer. Appellee's argument, however, misstates the holding of *Brohawn.* In *Brohawn, id.* at 407, 403, 414, 347 A.2d 842, the Court of Appeals held that Transamerica Insurance Company was not entitled to a declaratory judgment "that it not be required to indemnify [the insured defendant in a tort action] for any damages for which she may become liable[,]" and that it was required to defend the insured defendant despite a possible conflict

ing order, there were several courses of action, of varying degrees of severity, available to the circuit court to address Mid–Continent's alleged violation of the scheduling order. The circuit court could have taken additional steps to speak with a representative from Mid–Continent to ascertain the reason for its failure to attend the conference as ordered, and the possibility of its complying with the scheduling order at that time. The circuit court could have proceeded with the settlement conference without a senior officer of Mid–Continent, to evaluate whether a settlement within the settling authority of the independent adjuster representing Mid–Continent was attainable. The circuit court could have scheduled a hearing affording Mid–Continent the chance to explain the alleged violation.

The circuit court could have postponed the settlement conference to give Mid–Continent a chance to comply with the order. Pursuant to the circuit court's March 30, 2011, scheduling order, the settlement conference was scheduled for October 18, 2011; it was moved to September 27, 2011, at the request of the parties. The trial date was scheduled for November 7, 2011. It is clear that there was sufficient time for the circuit court to reschedule the settlement conference.

■ Finally, where the underlying scheduling order is valid, the circuit court could proceed under Maryland Rule 15–205 or 15–206 to sanction an insurer for constructive criminal or civil contempt for violation of the order.[14] In this case, neither party contends that Mid–Continent was unaware of the sched-

---

of interest. The Court held that the declaratory judgment issue would be decided at trial, and that the insurer's obligation to defend was based on the terms of the insurance contract. *Id.* at 405, 407–08, 347 A.2d 842. *Brohawn* is not applicable to this case.

14. To sanction a party for violation of a scheduling order, the underlying order must be valid. On brief, appellant contends that the circuit court abused its discretion in issuing an order directing Mid–Continent to attend the hearing with authority to settle "up to the full limits of its policy." Appellant argues that "[b]y requiring Mid[-]Continent to appear with one million dollars in settlement authority, [the circuit court]

uling order. It is undisputed that Mid–Continent had notice of the settlement conference, but failed to attend as ordered by not sending a "senior officer or employee[.]" Mid–Continent's violation of the order, therefore, could constitute con-

---

was clearly attempting, though indirectly, to coerce the parties to settle for a certain amount." Appellee responds that appellant failed to preserve the issue for appellate review, as appellant failed to argue in the circuit court the lack of authority to order Mid–Continent to attend the settlement hearing with authority to settle up to the limits of the policy. On the merits, appellee contends that the circuit court did not abuse its discretion in ordering Mid–Continent to attend the settlement hearing, because circuit courts "have the inherent power to regulate the proceedings that are before them ... not by rule or statute but by the control necessarily vested in courts to manage their own affairs[.]"

We agree with appellee that the issue as to the validity of the September 6, 2011, scheduling order is not preserved for appellate review. "Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court[.]" Md. R. 8–131(a). On September 6, 2011, the circuit court issued the order scheduling the settlement conference for September 27, 2011. There is no indication in the record that appellant or Mid–Continent objected to the order at any point within those twenty days or raised an issue as to the validity of the order in the circuit court. As such, the issue is not preserved. Indeed, although on brief appellant contended that the circuit court lacked authority to issue a scheduling order in which it required Mid–Continent to attend "with binding settlement authority up to the full limits of its policy[,]" at oral argument, appellant advised that the question of the validity of the scheduling order was not an issue that it was pursuing.

Notwithstanding appellant's failure to preserve the issue, it is readily apparent that the circuit court abused its discretion in issuing a scheduling order requiring Mid–Continent to attend the settlement conference "with binding settlement authority up to the full limits of its policy." Pursuant to Maryland Rule 2–504(b)(2)(C), the circuit court may order parties to participate in alternative dispute resolution "with authority to settle[.]" Nothing in the Rule permits a circuit court to require a party to settle for a specified amount. In this case, in ordering Mid–Continent to attend the settlement conference with binding authority to settle for the full policy limits, the circuit court, in essence, substituted its own authority for that of Mid–Continent's in setting the upper limit at which Mid–Continent must be willing to settle. As the scheduling order predetermined an amount up to which Mid–Continent was required to negotiate, thereby undermining Mid–Continent's ability to evaluate the claim against appellant and select a level at which it was willing to negotiate and settle, we conclude that the circuit court abused its discretion in issuing an order requiring the insurer to attend the conference with settlement authority "to the full limits of its policy."

tempt if it were an intentional disregard of a valid exercise of the circuit court's authority.[15] *See Betz*, 99 Md.App. at 66, 635 A.2d 77 ("The failure of a person to obey an order of court may constitute a contempt if the person has notice of the order and the failure to obey is deliberate. It is not the mere failure itself that is the contempt, however, but rather the intent behind and effect of that failure." (Citation omitted)). In this case, however, Mid–Continent's mere knowledge of the scheduling order and failure to appear at the settlement conference would not be sufficient to trigger contempt proceedings without further information as to Mid–Continent's conduct.[16] For example, the record does not disclose why Mid–Continent sent a third-party insurance adjuster rather

15. At oral argument, appellant incorrectly took the position that the circuit court lacked authority to sanction Mid–Continent for contempt because Maryland Rule 2–504(b)(2)(C) is permissive, providing that the circuit court may order a date for a settlement conference, but is not required to do so. That the circuit court is not required to schedule a settlement conference under Maryland Rule 2–504 is not dispositive. The circuit court clearly has authority to schedule such a conference and require attendance by the parties and other necessary persons or entities. Once the Order to Attend Settlement Conference was issued, it had the same compulsory effect as any other order of the court, and the circuit court, therefore, would have had authority to find Mid–Continent in contempt for violation of the scheduling order.

16. To proceed with constructive civil contempt pursuant to Maryland Rule 15–206, the court order or petition filed by a party must comply with Maryland Rule 2–303 and expressly state whether or not incarceration is sought. Md. R. 15–206(c)(1). Maryland Rule 2–303, in turn, governs the form of pleadings, and provides that each pleading shall contain "only such statements of fact as may be necessary to show the pleader's entitlement to relief or ground of defense." Md. R. 2–303(b). Thereafter, pursuant to Maryland Rule 15–206(c)(2), "[u]nless the court finds that a petition for contempt is frivolous on its face, the court shall enter an order providing for (i) a prehearing conference, or (ii) a hearing, or (iii) both." If incarceration to compel compliance is sought, Maryland Rule 15–206(c)(2)(C) sets forth the notice required to be provided to the alleged contemnor.

To proceed with constructive criminal contempt, on the other hand, pursuant to Maryland Rule 15–205, the court order or petition filed by the State's Attorney, the Attorney General, or the State Prosecutor must contain the information required by Maryland Rule 4–202(a), and must be served, along with a summons or warrant, in the manner outlined in Maryland Rule 4–212. Md. R. 15–205(d). Maryland Rule 4–202(a) sets

than a senior officer or employee as set forth in the September 6, 2011, order.

We agree with appellant that the circuit court's error in entering the default judgment was not harmless. In *Consol. Waste Indus. v. Std. Equip. Co.*, 421 Md. 210, 219–20, 26 A.3d 352 (2011), the Court of Appeals stated that error is not harmless where there is prejudice to the losing party, and that "[p]rejudice exists when the particular error is determined likely to have affected the verdict[.]" In this case, the error in question—the entry of the default judgment—deprived appellant of the right to a trial on the merits, and the possibility of prevailing against appellee's claims. The entry of the default judgment prejudiced appellant by dictating the verdict and the amount of the damages, and cannot be considered harmless.

## II.

Although we need not address Issue II, in light of our conclusion as to Issue I, we do so briefly for guidance to the trial court. Appellant raises many arguments as to how the circuit court abused its discretion, we focus on two matters—not exhaustive due to the many abuses of discretion—but which demonstrate that the circuit court unequivocally abused its discretion in entering the sanction of a default judgment against appellant. We explain.

To begin, there is no explanation in the record as to how the circuit court determined the figure of $1,000,000—the amount of the default judgment. Here, the parties themselves disagree on what, precisely, took place at the settlement confer-

---

forth the general requirements of a charging document, providing that the document must contain, *inter alia,* the name of the defendant and a "concise and definite statement of the essential facts of the offense with which the defendant is charged and, with reasonable particularity, the time and place the offense occurred."

In general, "a civil contempt need be proved only by a preponderance of the evidence, while a criminal contempt must be shown beyond a reasonable doubt." *Hermina,* 128 Md.App. at 580, 739 A.2d 893 (citation omitted). None of the Maryland Rules governing contempt mandate that contempt be exercised only against a party, *i.e.* anyone can be held in contempt after the proper procedures are followed.

ence—with appellee arguing that appellant's counsel returned to the settlement conference prior to entry of the default judgment, and appellant arguing that the judgment was entered while she was outside of the room on the telephone. As the settlement conference was conducted off-the-record in chambers, it is readily apparent that the circuit court did not take an account of any evidence to investigate the matter of damages, nor does the record disclose any findings made by the court in arriving at the $1,000,000 judgment. That $1,000,000 was the insurance policy limit does not explain why a default judgment of $1,000,000 was awarded against appellant.

Appellee contended at oral argument that the circuit court was not required to make a finding as to damages or to hold a hearing to establish the amount of damages because the default judgment was a sanction, not an award of damages. It is clear that whether sanctioning a party for a scheduling order violation under Maryland Rule 2–504, as appellee contends, or awarding damages, the circuit court was required to make findings explaining the action taken. *See, e.g., Maddox,* 174 Md.App. at 507, 921 A.2d 912 ("[T]he imposition of a sanction that . . . effectively dismisses a potentially meritorious claim without a trial, should be reserved for egregious violations of the court's scheduling order, and **should be supported by evidence** of willful or contemptuous or otherwise opprobrious behavior on the part of the party or counsel." (Emphasis added)).

Compounding the abuse of discretion, as a matter of procedure, appellant had no notice that it might be found liable as a result of Mid–Continent's failure to appear prior to the circuit court's entry of the default judgment. There is no precedent or rule establishing such a possibility, and the circuit court in this case provided no written notification to appellant. For these reasons, we have no difficulty in concluding that the circuit court abused its discretion in entering the default judgment against appellant.[17] We vacate the judgment of

---

17. Utilizing Ferguson's deposition testimony, appellee incorrectly contends that, pursuant to *Washington v. Williamson,* 23 Md. 244 (1865),

default and remand the case to the circuit court for further proceedings.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED. COSTS TO BE PAID BY APPELLEE.**

appellant is not entitled to appellate review because it benefitted from the judgment. In *Washington, id.* at 244, 252, the Court affirmed the judgment of the Court of Common Pleas of Baltimore City instructing the sheriff to pay an incorrectly calculated amount of back rent to the appellant from the proceeds of the sale of property, on the basis that the appellant, a second execution creditor, "would not be benefitted by a reversal of the judgment on this account" because "the first execution creditor would be entitled to the difference between the rent due" and the amount ordered, "and for that reason could not ask it." Unlike the instant case, *Washington* involved a party whose position would remain unchanged no matter the outcome of the appeal.